(65 P.3d 1068)
No. 88,086

JOSHUA STEPHEN MCNABB, By and Through his Mother and Next Friend, SHARON FOSHEE, *Appellee*, v. TIMOTHY MCNABB, *Appellant*.

Opinion filed April 4, 2003.

*David J. Morgan* and *T. Michael Wilson,* of Stinson, Lasswell & Wilson, L.C., of Wichita, for appellant.

*Richard K. Thompson* and *Rebecca Hesse,* of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before BEIER, P.J., PIERRON, J., and PADDOCK, S.J.

BEIER, J.: Timothy McNabb appeals the district court's finding that it had subject matter jurisdiction to determine child custody and visitation under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 38-1336 *et seq.,* and personal jurisdiction to determine child support under the Uniform Interstate Family Support Act (UIFSA), K.S.A. 23-9,101 *et seq.,* despite the existence of an earlier proceeding on those subjects in Virginia.

The procedural history of this case winds back and forth between Virginia and Kansas. A review of that history is necessary to an understanding of our holdings.

McNabb, Sharon Foshee, and their child resided together in Virginia until December 1999, when Foshee and the child moved

to Kansas. In April 2000, McNabb filed a petition for determination of custody and visitation in Virginia.

In July 2000, Foshee filed a petition for a declaration of paternity and an order of support in Kansas, which stated that McNabb might have filed a proceeding in Virginia but that Foshee had not yet been served. The Kansas court entered a temporary order regarding custody, visitation, and support.

On August 14, 2000, Foshee filed a motion for determination of jurisdiction in the Kansas proceeding. On August 23, 2000, a hearing was held on McNabb's petition in Virginia, and the next day Kansas Judge David Dewey and Virginia Judge Joseph Ellis had an unrecorded telephone discussion regarding jurisdiction.

On August 28, 2000, McNabb filed a motion to dismiss the Kansas case for lack personal jurisdiction under the Kansas long-arm statute and UIFSA and subject matter jurisdiction under UCCJEA. Foshee filed a response, arguing that (1) Kansas had personal jurisdiction under UIFSA, specifically K.S.A. 23-9,201(e), because McNabb caused Foshee and the child to move to Kansas, and (2) Kansas had subject matter jurisdiction under UCCJEA because the Virginia court had stayed its proceedings and deferred jurisdiction to Kansas.

On August 30, 2000, the Virginia court entered a written order finding jurisdiction appropriate in Virginia under UCCJA (now UCCJEA). However, it relied on the statute's provision covering simultaneous proceedings, the fact that Foshee and the child had resided in Kansas for 6 months, and the earlier unrecorded discussion of jurisdiction with Judge Dewey to find that it could defer to Kansas as the more convenient forum. The Virginia judge entered a temporary order regarding custody and visitation but stayed the order "pending acceptance of jurisdiction by the State of Kansas."

On September 13, 2000, Judge Dewey held a telephone hearing on jurisdiction with Judge Ellis of Virginia and all parties participating. Judge Dewey explained that the hearing was necessary because the prior conversation between the two judges had not been recorded and counsel had not been present. He stated that, having read the August 30 order, he saw only one remaining issue:

Whether Kansas could assume personal jurisdiction to decide child support under UIFSA because McNabb's abusive behavior drove Foshee and the child to Kansas.

At that point, Judge Ellis said he had been unaware of any abuse allegations at the time he entered the August 30 order deferring jurisdiction to Kansas. He emphasized that he might reconsider his ruling because Virginia would be the best forum for litigation of any abuse allegations. Judge Dewey stated that he would conduct a separate hearing on personal jurisdiction under UIFSA; and, if he were to conclude that he did not have jurisdiction over McNabb under that statute, he would send the entire matter back to Virginia. Judge Ellis agreed to take the case if Judge Dewey reached such a decision.

Two days later, apparently unbeknownst to Judge Dewey and Foshee and her counsel, Judge Ellis of Virginia entered an order vacating that portion of his August 30 decision deferring UCCJA (now UCCJEA) jurisdiction to Kansas. However, the visitation order remained stayed pending further communication with the Kansas court.

On October 6, 2000, Judge Dewey held a hearing in Kansas on whether there was personal jurisdiction over McNabb pursuant to K.S.A. 23-9,201(e) to enable decision on the UIFSA support issue. Foshee testified that McNabb drank excessively and that she feared for her own and her child's safety. She said McNabb had abused her physically on one occasion and had dropped the child on a table one time when McNabb was drinking months before she and child moved to Kansas. McNabb never told Foshee to move to Kansas.

Judge Dewey ruled the evidence was insufficient to establish that Foshee had moved to Kansas because of the acts or directives of McNabb. Thus the court held there was no personal jurisdiction over McNabb and the entire matter should be sent back to Virginia. Foshee's counsel objected that this ruling went beyond the purpose of the hearing, *i.e.*, that it included the custody and visitation issues under UCCJEA, but Judge Dewey initially stood firm.

On December 5, 2000, Foshee filed a motion to alter or amend the decision of the Kansas court. She relied on *Franklin v. Com.,*

*Dept. of Social Serv.*, 27 Va. App. 136, 144-47, 497 S.E.2d 881 (1998). In response, McNabb urged the court to follow *Windsor v. Windsor*, 45 Mass. App. 650, 655-56, 700 N.E.2d 838 (1998), and uphold its previous decision sending the entire case back to Virginia. No transcript of the hearing on this motion is contained in the record on appeal. On January 29, 2001, the court simply reversed its earlier decision, filing a journal entry finding Kansas had personal jurisdiction over McNabb under UIFSA.

Foshee then filed a motion to dismiss the Virginia case. In an order dated April 20, 2001, the Virginia court carefully differentiated between what the Kansas court had dealt with under UIFSA and what it had no power to deal with under UCCJA (now UCCJEA):

"Therefore, since jurisdiction over the custody matter was retained by this Court, and since the jurisdiction of the Commonwealth of Virginia is both original and primary pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), the Mother's Motion to Dismiss is DENIED. Clearly, a petition was 'pending' in Virginia at the time of the initiation of the Kansas proceedings by the Mother. Clearly, Virginia was the 'home state' of the child at the time of the filing here. Further, this Court complied fully with the notice mandates of Section 20-129 of the Code of Virginia and again, in accordance with statute, initially deferred to Kansas which deferral was vacated by Order subsequent to a hearing at which counsel for all parties were present."

". . . Although Kansas has determined that it has personal jurisdiction over Respondent pursuant to the Uniform Interstate Family Support Act, Virginia retains jurisdiction over custody for the above named child pursuant to the UCCJA, of which it cannot be divested absent its agreement."

The Virginia judge lifted the stay on his order granting McNabb visitation and ordered it to begin immediately.

Based on this Virginia order, McNabb then filed a motion to dismiss the Kansas proceeding on May 1, 2001. Again, the record on appeal lacks a transcript of the hearing on this motion. The journal entry that resulted simply denied it.

On August 3, 2001, Virginia issued its final order. The court found it had retained UCCJA (now UCCJEA) jurisdiction because it had, in the end, refused to defer it to Kansas. It found no evidence of abuse by McNabb toward Foshee or their child. The court awarded joint custody, granted McNabb unsupervised visitation

with the child in Virginia, and awarded no child support because McNabb would be responsible for the cost of transportation associated with visitation.

On October 9, 2001, the Kansas court issued its final order, finding it had the subject matter jurisdiction necessary to decide custody and visitation under UCCJEA and the personal jurisdiction necessary to decide child support under UIFSA. The court found McNabb had serious alcohol abuse and anger problems and lacked basic parenting skills, and the child would be in danger if compelled to travel to Virginia for unsupervised visitation. The court ordered supervised visitation with the child in Kansas; ordered McNabb to complete substance abuse, anger management, and parenting skills programs; and ordered McNabb to pay child support.

McNabb now appeals the Kansas order.

### Standard of Review

This court has unlimited review of jurisdictional issues and the district court's statutory interpretation. *State v. Hurla,* 274 Kan. 725, 56 P.3d 252 (2002) (jurisdiction); *In re Marriage of Riggle,* 30 Kan. App. 2d 967, 973, 52 P.3d 360 (2002) (statutory interpretation).

### UCCJEA Jurisdiction to Decide Custody and Visitation

On July 1, 2000, the Kansas Legislature repealed UCCJA, K.S.A. 38-1301 *et seq.,* and replaced it with UCCJEA, K.S.A. 38-1336 *et seq.* See *Ward v. Ward,* 272 Kan. 12, 30 P.3d 1001 (2001). Virginia followed suit in 2001 by repealing its version of UCCJA, Va. Code Ann. §§ 20-125 *et seq.,* and replacing it with UCCJEA, Va. Code Ann. §§ 20-146.1 *et seq.* We apply the later statute, as adopted in Kansas and Virginia, to determine subject matter jurisdiction over the custody and visitation issues between the parties. UCCJEA does not cover child support determinations. See K.S.A. 38-1337(4); K.S.A. 38-1341; Va. Code Ann. § 20-146.12, Comment.

McNabb argues that the Kansas district court misapplied UCCJEA. He contends that Kansas lacked initial jurisdiction under K.S.A. 38-1348 and that it could not correctly assume jurisdiction

under the simultaneous proceedings provision of the statute, K.S.A. 38-1353.

K.S.A. 38-1348 and its essentially identical Virginia counterpart, Va. Code Ann. § 20-146.12, provide in relevant part:

"(a) Except as otherwise provided in K.S.A. 38-1351 and amendments thereto, a court of this state has jurisdiction to make an initial child-custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under K.S.A. 38-1354 or 38-1355 and amendments thereto, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

. . . .

"(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state."

K.S.A. 38-1353 and its Virginia counterpart, Va. Code Ann. § 20-146.12, provides the following with regard to simultaneous proceedings:

"(a) . . . [A] court of this state may not exercise its jurisdiction under K.S.A. 38-1348 through 38-1357 and amendments thereto if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum . . . .

"(b) . . . If the court determines that a child-custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this act, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this act does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding."

In addition, both Kansas and Virginia incorporate Section 207 of UCCJEA regarding how and why to make a determination of which jurisdiction is an inconvenient forum:

"(a) A court of this state which has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. *The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.*

"(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) *Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;*

(2) the length of time the child has resided outside this state;

(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) *the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;*

(7) *the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;* and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

"(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state *and may impose any other condition the court considers just and proper.*" (Emphasis added.) K.S.A. 38-1354; see also Va. Code Ann. § 20-146.18

McNabb argues that Virginia was the child's home state under 38-1348(a) because the child lived there within 6 months before the commencement of the Virginia proceeding, and because the Virginia court elected to retain jurisdiction by vacating any tentative deferral to Kansas before Judge Dewey had accepted jurisdiction. In McNabb's view, Kansas was therefore required to dismiss the entire case because the Virginia court ultimately found that

Kansas was not the more appropriate forum in which to decide the UCCJEA issues of custody and visitation.

McNabb is correct that, under the Virginia counterpart to K.S.A. 38-1348(a), Virginia had initial child-custody jurisdiction as the child's home state when he filed his action in that state in April 2000. See Va. Code Ann. § 20-146.12. The child had resided in Virginia within 6 months of the commencement of the proceeding, and McNabb continued to live there. Under both Virginia and Kansas law, Virginia's exclusive jurisdiction continued even after the Kansas proceeding was filed in July 2000 because Virginia had not yet stayed its proceedings or deferred jurisdiction to Kansas as the more appropriate forum. See K.S.A. 38-1348(a)(2); 38-1353(a), (b); compare Va. Code Ann. §§ 20-146.12(A)(2), 20-146.17 (A), (B).

When Judge Ellis stayed his orders and tentatively deferred jurisdiction to Kansas on August 30, 2000, Judge Dewey had an opportunity to assume or accept UCCJEA jurisdiction. See K.S.A. 38-1348(2); 38-1353(a). Had he done so before Judge Ellis revoked Virginia's deferral on September 15, 2000, we would affirm Kansas' ultimate assertion of UCCJEA jurisdiction to decide custody and visitation.

Instead, Judge Dewey failed to take any action to accept UCCJEA jurisdiction until it was too late. By the time he had held an evidentiary hearing on UIFSA personal jurisdiction and finally ruled that he would tie his acceptance or rejection of UCCJEA jurisdiction to the outcome of the UIFSA issue, Judge Ellis had already thought better of his August 30, 2000, UCCJEA deferral and had vacated it.

Both the Kansas and Virginia versions of UCCJEA empower a judge to raise the subject of inconvenient forum on his or her own initiative, see K.S.A. 38-1354(a); Va. Code Ann. § 20-146.18 (A), and to attach to any deferral whatever conditions he or she sees fit, see K.S.A. 38-1354(c); Va. Code Ann. § 20-146.18(C). In fact, the National Conference for Commissioners on Uniform State Laws, which was responsible for drafting UCCJEA, stated that the section governing the determination of forum convenience would permit the original court considering deferring jurisdiction to take

several actions, including resuming jurisdiction if the court of the other state refused to take the case. UCCJEA § 207, 9 U.L.A. 683, Comment (1999) . Although Judge Dewey did not refuse to take the case before September 15, 2000, he delayed; we hold that the delay left the course of action ultimately chosen by Judge Ellis open. We also note that Virginia law permitted Judge Ellis to vacate his earlier ruling within 21 days. See Va. Sup. Ct. R. 1:1. September 15 was well within the 21-day time period following his August 30 order tentatively deferring to Kansas.

Under these circumstances, Judge Dewey erred in attempting to assert subject matter jurisdiction later. Virginia had already reasserted its exclusive jurisdiction over those claims. It is unfortunate that Judge Ellis failed to inform Judge Dewey and Foshee and her counsel of his September 15 order in a timely way, but the failure to inform them does not alter the character of the action taken. Judge Ellis evidently realized at the time of the teleconference 2 days earlier that any allegations of abuse would be relevant not only to the issue of personal jurisdiction under UIFSA in Kansas but to the substantive merits of custody and visitation arguments in either state. UCCJEA expressly recognizes that judges should take abuse allegations, and the availability of evidence to support or refute such allegations, into account when deciding whether a forum is convenient. See K.S.A. 38-1354(b)(1), (6), (7); Va. Code Ann. § 20-146.18 (B)(1), (6), (7). Thus Judge Ellis was within both the letter and the spirit of UCCJEA when he revisited the inconvenient forum issue *sua sponte,* once he was told that abuse allegations were among the matrix of factors he should consider before deferring jurisdiction to Kansas.

Our holding on the UCCJEA jurisdiction issue does not necessarily mean that Judge Dewey was required to dismiss the entire Kansas action, as McNabb asserts. UCCJEA and UIFSA demand different patterns of analysis. We now turn to an independent review of McNabb's challenge to the Kansas court's exercise of personal jurisdiction over him under UIFSA.

*UIFSA Jurisdiction to Decide Child Support*

UIFSA, K.S.A. 23-9,201 *et seq.,* was promulgated and intended

to be used as a procedural mechanism for the establishment, modification, and enforcement of child and spousal support. It was designed to correct the problem of multiple support orders under the prior act, and it established a priority scheme for the recognition and enforcement of multiple existing support obligations. *Riggle*, 30 Kan. App. 2d at 974.

Foshee claims Kansas was permitted to exercise personal jurisdiction over McNabb under UIFSA because the child was residing "in this state as a result of the acts or directives" of McNabb. See K.S.A. 23-9,201(e). The required "acts or directives," she asserted, came in the form of McNabb's abusive behavior toward her and the child.

As they did with Judge Dewey, the parties directed us to two cases interpreting 23-9,201 in situations where abuse was alleged. The cases arrived at opposite conclusions.

In *Franklin*, 27 Va. App. at 144-47, the Virginia Court of Appeals found jurisdiction was properly exercised under the Virginia equivalent of K.S.A. 23-9,201(e) after the husband physically abused his wife and ordered her and the children out of their home in Africa, causing them to return to their earlier home in Virginia.

In *Windsor*, 45 Mass. App. at 655-56, a woman alleging cruel and abusive treatment sought a divorce and child support 18 years after she had left her husband in Florida and moved to Massachusetts. Distinguishing the case from *Franklin*, the Massachusetts Court of Appeals ruled the woman had presented insufficient evidence to demonstrate that she and her children were forced by the abuse to flee Florida.

Other states also have spoken to this provision in other circumstances. In *Butler v. Butler*, 152 N.C. App. 74, 566 S.E.2d 707 (2002), a father who resided in the Bahamas had purchased a home in North Carolina, in part to enable his daughter to attend school there. That action supported the legal conclusion that she was residing in the state as a result of the acts or directives of her father. In *Daknis v. Burns*, 719 N.Y.S.2d 134, 135, 278 App. Div. 2d 641 (2000), the court ruled that the children's residence in New York was the result of the acts and directives of their mother when she had agreed to transfer custody of them to their father in that state.

In contrast, in *Bushelman v. Bushelman*, 246 Wis. 2d 317, 629 N.W.2d 795 (2001), the court concluded that the children's residence in Wisconsin was not the result of an act or directive by their incarcerated father when he had merely consented to their move. In *In re Marriage of Zinke*, 967 P.2d 210 (Colo. App. 1998), a mother's acquiescence to her child living with the child's father in Colorado was not viewed as a result of the mother's act or directive.

In our view, Judge Dewey had it right the first time. The evidence in this case places it in the same category with *Windsor*, *Bushelman*, and *Zinke*, and Kansas lacked personal jurisdiction over McNabb under UIFSA. McNabb did not order Foshee and the child to move to Kansas, and the one incident of physical abuse to which Foshee points happened more than a year before she moved. Although McNabb's drinking certainly made the relationship of the adults tumultuous, it did not cause Foshee and the child to flee Virginia for Kansas.

Reversed and remanded for entry of an order of dismissal.