SNEED, Appellee,

v.

SNEED, Appellant.

[Cite as *Sneed v. Sneed,* 164 Ohio App.3d 496, 2005-Ohio-6413.]

Court of Appeals of Ohio,
Third District, Shelby County.

No. 17-05-16.

Decided Dec. 5, 2005.

Andrew D. Lucia, for appellant.

Charles H. Sell II and Lenee M. Brosh, for appellee.

ROGERS, Judge.

{¶ 1} Defendant-appellant, Stephen Sneed, appeals a judgment of the Shelby County Court of Common Pleas, granting plaintiff-appellee, Margaret Sneed, a divorce and custody of their children. On appeal, appellant asserts that the trial court's finding that it had personal jurisdiction over him was contrary to law and against the manifest weight of the evidence. Finding that the trial court properly found that appellee had established limited personal jurisdiction over nonresident appellant pursuant to R.C. 3115.03 but that the trial court went beyond the limited jurisdiction granted by that statute, we affirm in part and reverse in part the judgment and remand the cause for proceedings consistent with this opinion.

{¶ 2} In October 1996, appellee and appellant were married in Kansas. Three children were born to their marriage, Kamiko, born December 17, 1988, Kaleia, born April 18, 1991, and Keiko, born February 11, 1995. Because appellee and appellant were both in the military, they moved frequently, living in Germany for a significant period of time. In the late 1990s, the family was living in Texas. Appellant retired from the military in 1998, and appellee had retired approximately ten years earlier.

{¶ 3} In August 2001, appellee and the three children relocated to Sidney, Ohio, where appellee's family lived. Appellee and her children have remained in Sidney since they left Texas. In October 2003, appellee filed in Ohio for divorce, custody of the children, and child support. Subsequently, appellant was served with notice of the divorce in Copperas Cove, Texas.

{¶ 4} In December 2003, appellant, through his counsel and without consenting to jurisdiction, filed a motion to dismiss pursuant to Civ.R. 12(B)(6) on the grounds that the trial court lacked personal jurisdiction over him under Civ.R. 4.3. Subsequently, appellee filed a motion in opposition to appellant's motion to dismiss, citing R.C. 3115.03(E) to establish personal jurisdiction over appellant.

{¶ 5} In January 2004, the magistrate held a hearing on appellant's motion to dismiss. Appellant did not appear, but was represented by counsel to argue that the trial court had failed to establish personal jurisdiction. At the hearing, appellee presented the testimony of herself and the parties' 15-year-old daughter Kamiko.

{¶ 6} According to Kamiko, appellant had been physically abusive while the family was living in Texas. Specifically, she testified that appellant had hit her and her sisters with a belt for no reason and that the abuse was happening on

average several times a week. She stated that these incidents of physical abuse took place while appellee was at work and appellant was watching the children. She went on to state that appellant would tell the children that they were being punished for not cleaning or doing what they were told. However, Kamiko stated that the children had done what they had been told to do and that appellant had not been hitting them to punish them. Kamiko testified that when appellant hit them, marks were left on them, but that they would usually go away after a while. She went on to state that appellant never left bruises on the children.

{¶ 7} Kamiko also stated that she did not tell her mother about the abuse, because she was afraid of appellant and believed that telling her mother would cause appellant to abuse the children more. Additionally, she stated that after the abuse continued for two and a half months, she decided to tell appellee about the abuse while appellant was out of town. Finally, she stated that when appellant came back to town, she witnessed a fight between appellant and appellee. Kamiko stated that during that fight, appellant choked appellee.

{¶ 8} Appellee also testified at the hearing. According to appellee, she did not know that appellant was physically abusing the children until Kamiko told her. Appellee did admit that she and appellant did use corporal punishment on the children; however, she went on to state that she did not believe in using the belt or hitting for no reason. She testified that she had witnessed appellant slap Kamiko one time, that she did not approve of appellant's hitting Kamiko, and that she had told him not to do that again. She stated that she had never seen any marks on the children, that she had never seen appellant excessively hit the children, and that she had never called children's services to report abuse.

{¶ 9} Appellee also testified that after Kamiko had told her about the physical abuse, the other children confirmed Kamiko's allegations. Appellee stated that after talking with the children, she spoke with appellant while he was out of town and told him that she and the children were leaving. She stated that appellant had returned to Texas on August 12, 2001, and that she had left Texas with the children on August 21, 2001. Appellee testified that although appellant had returned to Texas prior to appellee's leaving with the children, appellant had moved in with the babysitter, who lived next door.

{¶ 10} Appellee testified that when she confronted appellant at the babysitter's house, she and appellant got into a fight, which turned physical after she hit appellant. Appellee went on to state that after the fight with appellant, she was no longer afraid of him, because she knew that she and the children were leaving Texas. She testified that Kamiko and Kaleia left Texas by plane and that she and Keiko drove to Ohio. Finally, she testified that appellant had wanted them to leave and that she and Keiko had left a day earlier than she had planned because appellant had told them to leave.

{¶ 11} In February 2004, the magistrate issued a decision, finding that the trial court had personal jurisdiction over appellant under R.C. 3115.03(E). Specifically, the trial court found that through appellant's "actions and directives" he had forced appellee and the children to flee. Accordingly, the trial court had personal jurisdiction over appellant pursuant to R.C. 3115.03(E).

{¶ 12} Subsequently, appellant filed his objections to the magistrate's decision. In May 2004, the trial court overruled appellant's objections to the magistrate's decisions, finding that the trial court did have personal jurisdiction over appellant under R.C. 3115.03(E). The case was resubmitted to the magistrate to determine appellee's initial petition for divorce.

{¶ 13} In August 2004, a hearing on appellee's petition was held before the magistrate. Again, appellant was not personally present; however, he was represented by counsel, who again asserted appellant's objection to personal jurisdiction. In September 2004, the magistrate filed a decision, finding that the trial court should award custody of the three children to appellee and that appellant could seek visitation if he desired. Additionally, the magistrate recommended that appellant be ordered to pay child and spousal support and ordered a distribution of all marital property. Again, appellant properly filed his objections to the magistrate's decision. In his second set of objections, appellant incorporated all of the arguments from his previous objections. Additionally, he objected to the magistrate's decision on the grounds that even if the trial court did properly have personal jurisdiction over appellant under R.C. 3115.03(E), the trial court was limited to issues of support. Appellee filed a reply to appellant's objections, and appellant filed supplemental objections to the magistrate's decision.

{¶ 14} In February 2005, the trial court issued a decision and order overruling appellant's objections. Specifically, the trial court reaffirmed its ruling that it had personal jurisdiction over appellant pursuant to R.C. 3115.03(E). Additionally, the trial court found that any argument of limited jurisdiction by appellant had been waived, because he had not made those arguments in his initial objections. Finally, in April 2005, the trial court issued a final judgment entry and decree of divorce, granting custody of the children to appellee. Additionally, the trial court awarded both child and spousal support to appellee and made a division of marital property. It is from this judgment that appellant appeals, presenting the following assignment of error for our review.

> The trial court decision finding personal jurisdiction over the Appellant and thereafter granting monetary awards against the Appellant is contrary to law and against the manifest weight of the evidence.

{¶ 15} In the sole assignment of error, appellant asserts that the trial court erred in finding that it had personal jurisdiction over him for the purposes of this divorce. Specifically, appellant argues that the trial court's finding that it had

personal jurisdiction pursuant to R.C. 3115.03(E) is not supported by sufficient evidence, because appellee did not leave Texas as a result of his acts and directives. In the alternative, appellant argues that if the trial court's finding that it had jurisdiction pursuant to R.C. 3115.03(E) is supported by sufficient evidence, then the trial court's jurisdiction under R.C. 3115.03 is limited to issues of support.

{¶ 16} Appellant argues at length that the trial court did not have personal jurisdiction over him, because he had no minimum contacts with the state of Ohio pursuant to Civ.R. 4.3(A). Appellee concedes this point. Accordingly, we find it unnecessary to determine this issue. Rather, the issue before this court is whether the trial court had personal jurisdiction over appellant pursuant to R.C. 3115.03.

{¶ 17} R.C. 3115.03 provides:

In a proceeding to establish, enforce, or modify a support order or to determine the existence or nonexistence of a parent and child relationship, a tribunal or support enforcement agency of this state may exercise personal jurisdiction over a nonresident individual if any of the following is the case:

\* \* \*

(E) The child resides in this state as a result of the acts or directives of the individual.

{¶ 18} The issue of what constitutes "acts and directives" under R.C. 3115.03 is an issue of first impression in Ohio. Ohio's Uniform Interstate Family Support Act ("UIFSA"), R.C. 3115.01 through 3115.59, was enacted in January 1998 and governs continuing and exclusive jurisdiction over child-support orders. Adopted as the long-arm provision of UIFSA, R.C. 3115.03(E), as noted above, provides that in order to "establish, enforce, or modify a support order," an Ohio court may exercise personal jurisdiction over a nonresident parent when "[t]he child resides in this state as a result of the acts or directives of the individual." Therefore, jurisdiction is appropriate in this case if appellant's actions in Texas constituted "acts or directives" that caused appellee to reside in Ohio.

{¶ 19} Other jurisdictions interpreting the long-arm provision of the UIFSA have reached varying results, depending on the particular facts and circumstances. In *In re the Marriage of Malwitz* (2004), 99 P.3d 56, 61, the Colorado Supreme Court found that a nonresident father "engaged in a course of conduct designed to terrorize [the mother] and her family, essentially forcing [the mother] to seek safety in Colorado." In *Malwitz,* the mother claimed that she and the nonresident father had lived together in Texas. Id. at 58. In 1998, after confronting the nonresident father with her suspicions that he was sexually abusing her daughter, the nonresident father threatened to kill the mother if she

turned him in. Id. That night the mother left the nonresident father and reported his threats and the sexual abuse to the police. Id. Initially after leaving, the mother moved into a friend's trailer in Texas. Id. However, after the nonresident father continued to harass the mother, which she continued to report, she moved into a women's shelter. Id. The nonresident father continued to harass the mother until she fled with her daughter to her father's home in Colorado. Id. Accordingly, the court concluded that the nonresident father's actions constituted "acts and directives" within the meaning of the long-arm provision of UIFSA. Id. at 61.

{¶ 20} In *McNabb ex rel. Foshee v. McNabb* (2003), 31 Kan.App.2d 398, 65 P.3d 1068, the Kansas Court of Appeals refused to find personal jurisdiction over a nonresident father under UIFSA, because it concluded that the child did not reside in Kansas as a result of the acts or directives of the father. In *McNabb*, the mother claimed that the father drank excessively, had abused her on one occasion a year before the mother and child moved to Kansas, and had dropped the child on one occasion several months before the mother and child moved to Kansas. 65 P.3d at 1070–1071. However, because the one physical incident between the father and mother occurred over a year before the mother fled and the father's drinking "did not cause [the mother] and the child to flee Virginia for Kansas," the court ruled that the father's "acts or directives" did not cause the mother and child to reside in Kansas. Id. at 1075. Accordingly, the court concluded that personal jurisdiction was not available under UIFSA. Id.

{¶ 21} In *Windsor v. Windsor* (1998), 45 Mass.App.Ct. 650, 700 N.E.2d 838, a Massachusetts appellate court concluded that personal jurisdiction over a nonresident father was inappropriate under UIFSA. In *Windsor*, the mother left the father in Florida in June 1977, gave birth to their son in Massachusetts in September 1977, and filed a complaint for divorce, including a demand for child support, nearly 20 years later, in June 1995. 700 N.E.2d at 839. In her complaint, the mother alleged that the father had been guilty of "cruel and abusive treatment" during the course of the marriage, but did not offer any specific facts or testimony to support that claim. Id. at 841. Thus, finding that "[n]o affidavit, testimony, or authenticated or verified document even intimates, let alone establishes, that the wife and her children were caused 'to flee' from Florida to Massachusetts as a result of any cruel and abusive acts of the husband or any 'directive' he made," the court concluded that personal jurisdiction could not be exercised under UIFSA. Id. at 842.

{¶ 22} However, in *Franklin v. Virginia* (1998), 27 Va.App. 136, 497 S.E.2d 881, 885–886, a Virginia appellate court held that UIFSA's long-arm provision authorized jurisdiction over a husband who, "[a]fter several physical altercations, * * * ordered [his] wife and the children from their home in Africa." In

response to the husband's order, his wife and children fled to Virginia, because the family had no where else to go in Africa and Virginia was the family's home prior to living in Africa. *Franklin*, 497 S.E.2d at 886. The court rejected the husband's contention that because he did not specifically direct the wife and children to move to Virginia, the Virginia courts could not exercise jurisdiction. Id. Instead, the court noted that "[t]o allow [the] husband to escape his support obligations merely because he failed to dictate the specific destination when he ordered his family to leave the marital home would frustrate the purpose of the legislature in enacting [UIFSA]." Id. Thus, focusing on the affirmative acts of the nonresident father that caused the wife and children to reside in Virginia, rather than the voluntary choices of the mother, the court concluded that personal jurisdiction was appropriate under UIFSA. Id. at 885–886.

{¶ 23} Based upon an analysis of the above case law, it appears that when there is a pattern of abuse or harassment, the resident parent will be considered to have fled as a result of the "acts and directives" of the nonresident parent and, therefore, personal jurisdiction is appropriate under the UIFSA statute. See, *Malwitz*, 99 P.3d at 58; *Franklin*, 497 S.E.2d at 885–886. Additionally, it seems clear that when there is a single incident of abuse or when there is no testimony of specific facts of such abuse, personal jurisdiction is not appropriate under UIFSA. See *McNabb*, 65 P.3d at 1075; *Windsor*, 700 N.E.2d at 842. However, because most cases will not fall within these specific fact patterns, each case must be determined on its facts.

{¶ 24} In the case sub judice, Kamiko clearly testified to a pattern of abuse. Additionally, the pattern of abuse that she testified to occurred within a few months of the family's leaving Texas. While we cannot find that the abuse Kamiko described rises to the level of abuse described in *Malwitz*, we are nevertheless satisfied that her testimony is sufficient to establish that appellant's "acts and directives" did lead to appellee's decision to bring her children to Ohio, where her family resided. Accordingly, we do not find that the trial court's conclusion that it has personal jurisdiction over appellant is either contrary to law or against the manifest weight of the evidence.

{¶ 25} Nevertheless, we are convinced that the trial court did go beyond the limited jurisdiction that R.C. 3115.03 bestows upon the court. Here, the trial court's April 2005 judgment entry was a final entry, granting a decree of divorce. The judgment entry also granted appellee custody of the children, awarded appellee both child and spousal support, and made a division of marital property.

{¶ 26} While the trial court found that appellee waived any argument to limited jurisdiction, we do not find that appellee's failure to specifically argue limited

jurisdiction constitutes such a waiver. Furthermore, it is axiomatic that a court's authority to act is limited to that specifically granted by statute.

{¶ 27} Again, R.C. 3115.03 provides that "In a proceeding to *establish, enforce, or modify a support order or to determine the existence or nonexistence of a parent and child relationship,* a tribunal or support enforcement agency of this state may exercise personal jurisdiction over a nonresident individual * * *." (Emphasis added.) Accordingly, the trial court was permitted to establish, enforce, or modify a support order, which is defined by R.C. 3115.01(W) as "a spousal support order or child support order." R.C. 3115.01(T) defines "spousal-support order" as "an order for the support of a spouse or former spouse that provides for monetary support, whether current or in arrears, health care, or reimbursement, and may include related costs and fees, interest, income withholding requirements, attorney fees, and other relief." R.C. 3115.01(B) similarly defines "child-support orders."

{¶ 28} Accordingly, the UIFSA, which includes R.C. 3115.03 and 3115.01, grants a trial court only limited jurisdiction over a nonresident individual, once personal jurisdiction has been established. Because a trial court's jurisdiction is limited according to the exact language provided by R.C. 3115.03 and 3115.01, the trial court had no authority to grant a decree of divorce or to make a division of property.

{¶ 29} In sum, while we are satisfied that there was sufficient evidence to establish personal jurisdiction over appellant pursuant to R.C. 3115.03, we find that the trial court went beyond the limited jurisdiction that that statute provides. Accordingly, appellant's sole assignment of error is overruled in part and sustained in part, and this cause is remanded for further proceedings consistent with this opinion.

{¶ 30} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as to the issue of the trial court's limited jurisdiction pursuant to R.C. 3115.03 and remand the matter for further proceedings consistent with this opinion. Having found no other error prejudicial to appellant, the judgment is affirmed in all other respects.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BRYANT and SHAW, JJ., concur.