NOT DESIGNATED FOR PUBLICATION

No. 112,206

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

HEIDI HARTER (fka SZYKOWNY),
*Appellant*,

v.

DAVID J. SZYKOWNY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed September 18, 2015. Affirmed.

*Rebecca Mann*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellant.

No appearance by appellee.

Before MALONE, C.J., MCANANY and ATCHESON, JJ.

*Per Curiam*:  Heidi Harter, formerly Szykowny, appeals the district court's determination that it has jurisdiction over child custody issues under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). She also appeals the district court's denial of her request for attorney fees.

*Facts and Procedural History*

Heidi and David Szykowny were married in 2001. They have two children.

1

Heidi filed her petition for divorce in March 2011. She and David were both residents of Butler County at the time.

The following month David moved for an order declaring an emergency and waiving the 60-day waiting period for the final hearing. The court granted the motion and entered its decree of divorce in April 2011. In the decree the court granted the parties joint custody of the children with primary residential placement of the children with Heidi. The court recognized at the time that the parties had agreed that Heidi and the children eventually would be moving to Eureka Springs, Arkansas, where Heidi would enroll the children in an appropriate school. Apparently David had either moved to Utah or was in the process of moving to Utah when the divorce was granted.

In July 2013 David moved the court to change custody of the children. His motion was in response to Heidi's expressed intention to leave Arkansas and to move to Hawaii with the children. David contended that the move would not provide the children with an appropriate environment, and he sought primary residential placement of the children with him in Utah. He asserted that the Butler County District Court had continuing jurisdiction pursuant to the April 2011 decree of divorce. He also sought ex parte emergency orders, which the court issued, to prevent Heidi from moving the children to Hawaii pending a decision by the court on David's motion.

In September 2013, Heidi moved the court to relinquish jurisdiction, asserting that the divorce decree "in no way limits the right of either parent having Primary Residential Custody of their child, to petition any Court for a change of jurisdiction pursuant to the Uniform Child Custody Jurisdiction [*sic*] Act (UCCJEA)." Heidi provided the court with an affidavit asserting that neither party had any connection with the State of Kansas. She also submitted a letter from Judge Gerald Kent Crow of the Carroll County Circuit Court in Arkansas, which had been directed to counsel. In the letter, Judge Crow stated, "I have reviewed you[r] pleadings in this matter and it appears that some action needs to take

2

place to relieve Kansas of jurisdiction." Judge Crow opined that the Kansas judge most likely would not hesitate to remove this case from his docket. He further suggested that because of Heidi's anticipated move to Hawaii, "it would be burdensome for the parties to move the litigation or support issue there from Arkansas."

In October 2013, the Butler County District Court issued an order finding that neither the parties nor the children resided in Kansas but that "the parties essentially contracted themselves out of requesting another state to seize jurisdiction of this matter without this Court first releasing the same pursuant to their Decree of Divorce agreement." The district court further found that Arkansas would be an inconvenient forum, and it declined to release its jurisdiction. Following this October order, the district court continued to conduct hearings and issue orders in the case.

In April 2014, Heidi moved the court to set aside its October 2013 order and all subsequent orders, asserting that the district court lacked jurisdiction under the UCCJEA and that the parties could not vest the Kansas court with subject matter jurisdiction by agreement. She argued that Kansas was an inconvenient forum. None of the parties resided in Kansas or maintained any connections with Kansas. She asserted that the relevant witnesses and evidence were in Arkansas, the children's home state. Heidi also requested attorney fees in the event that she prevailed on the motion pursuant to K.S.A. 2014 Supp. 23-37,312.

At the May 6, 2014, hearing on Heidi's motion, there was some discussion about an order that Arkansas had issued shortly after Kansas declined to release jurisdiction, wherein Arkansas recognized its authority to exercise its jurisdiction in this matter but declined to do so until Kansas relinquished jurisdiction. We do not find the Arkansas order in the record on appeal.

3

Following the May 6, 2014, hearing, the district court took the matter under advisement and on July 7, 2014, adopted David's proposed findings of fact and conclusions of law and denied relief on Heidi's April 2014 motion. The court found that Heidi's motion was a motion for reconsideration and was untimely. Nevertheless, the court concluded that Kansas had continuing jurisdiction in the case and that releasing jurisdiction would frustrate the purposes of the UCCJEA. In its ruling, the court made the factual finding that "the Arkansas trial court has declined to exercise jurisdiction in this matter." The court's conclusions of law included the following adopted from David's brief:

"6. Releasing jurisdiction to Arkansas under the premise that Arkansas has more of a connection to the minor children and thus justification for this Court to release jurisdiction is disingenuous. Arguing that Arkansas has more of a connection to the minor children while simultaneously attempting to move the children from Arkansas to Hawaii flies in the face of what the UCCJEA was meant to guard against.

"7. It is not in the spirit of the UCCJEA nor judicial economy for this Court to decline jurisdiction so that Arkansas can claim jurisdiction and allow the Petitioner to move to Hawaii only to then have Arkansas lose jurisdiction in six months because Hawaii will then have jurisdiction.

"8. It is not in the public policy of the State of Kansas to allow such unfettered mobility of a residential parent. 'While we recognize that citizens of this nation ordinarily have the constitutional right to travel from one state to another and to take up residence in the state of one's choice, we also recognize a legitimate state interest in restricting the residence of a custodial parent.['] *Carlson v. Carlson*, 8 Kan. App. 2d 564[, 661 P.2d 833 (1983)].

"9. Lastly, Arkansas is an inconvenient forum under the UCCJEA and K.S.A. 23-37,207. Factors to be considered when determining an inconvenient forum include: the length of time the child has resided outside of the state, any agreement of the parties as to which state should assume jurisdiction, the ability of the court of each state to decide the

4

issue quickly, and the familiarity of the court of each state with the facts and issues of the pending litigation."

"10. All of the above factors favor this Court retaining this matter as the children resided in Kansas longer than they have resided in Arkansas, the parties agreed for Kansas to retain jurisdiction of this matter despite knowing that the Respondent lived in Utah and the Petitioner was to live in Arkansas, this Court has the better ability to litigate this matter quickly as the matter is scheduled for evidentiary hearing already and releasing to Arkansas would result in the process starting over, this Court has the only familiarity with the issues and facts of these parties as no other litigation has occurred in any other jurisdiction."

On July 15, 2014, Heidi moved for reconsideration and for a stay of the proceedings. At a hearing on these motions, David's attorney read into the record portions of the October 2013 order from Arkansas mentioned earlier, in which the Arkansas court stated:

"'This Court recognizes the order entered on September 23rd, 2013, in the District Court of Butler County, Kansas; wherein, the issuing court denied plaintiff's motion for the Court to relinquish jurisdiction of this matter to the State of Arkansas.'

"'. . . While recognizing its authority to exercise jurisdiction, this Court, in accordance with [the] Arkansas Code . . . hereby declines to exercise its jurisdiction in the matter sought to be registered and enforced by the plaintiff, as it finds the State of Kansas is the more appropriate forum to continue to exercise jurisdiction, and the State of Arkansas is an inconvenient forum, having considered all the relevant factors enumerated.'"

The district court denied Heidi's motion to reconsider and certified the matter for an interlocutory appeal. Heidi's appeal brings the matter to us.

5

*Discussion*

■ *Standard of Review*

The issue for us is whether the district court erred in finding that it had subject matter jurisdiction over this dispute. Whether subject matter jurisdiction exists is a question of law over which we exercise unlimited review. *Graham v. Herring*, 297 Kan. 847, 855, 305 P.3d 585 (2013). The question involves interpretation of the UCCJEA, which also requires us to exercise unlimited review. *McNabb v. McNabb*, 31 Kan. App. 2d 398, 403, 65 P.3d 1068 (2003).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meaning. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). When a statute is plain and unambiguous, we will not speculate about legislative intent and will refrain from reading something into the statute that is not readily found in its words. 298 Kan. at 738.

■ *Jurisdiction*

*Subject Matter Jurisdiction by Contract*

Heidi correctly argues that contrary to the district court's finding, the parties could not contract to keep subject matter jurisdiction in Kansas. Subject matter jurisdiction is created by statute and establishes the court's authority to hear and decide a certain type of action. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773-74, 148 P.3d 538 (2006), *disapproved of on other grounds by Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290

6

P.3d 555 (2012). Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction. *Ryser v. State*, 295 Kan. 452, 456, 284 P.3d 337 (2012).

The parties' divorce decree contains two paragraphs addressing the continuing jurisdiction of the district court. The first states:

"The parties are advised and understand that any provision related to legal custody, residential custody, parenting time, child support, education and other matters related to the minor children shall be subject to the continuing jurisdiction of this Court *as provided by law*." (Emphasis added.)

Far from "contract[ing] themselves out of requesting another state to seize jurisdiction of this matter without this Court first releasing the same," as the district court found, in this provision of the decree the parties merely acknowledged that Kansas would retain jurisdiction over child custody issues as provided by law, which in this case would be K.S.A. 2014 Supp. 23-37,202, the exclusive, continuing jurisdiction statute found in the Kansas Uniform Child Custody Jurisdiction and Enforcement Act.

The second provision of the divorce decree, labeled "Retention of Child Custody Jurisdiction," states:

"Recognizing this Court to have jurisdiction over child custody matters to avoid future jurisdictional competition or conflict and to discourage continuing controversies over child custody and avoid re-litigation of custody decisions and to build stability and consistency for the minor children, the parties agree and this Court Orders, that until this Court orders otherwise, the State of Kansas and this Court shall retain jurisdiction over future proceedings involving custody and visitation. *This Agreement in no way limits the right of either parent having Primary Residential Custody of their child, to petition any Court for a change of jurisdiction pursuant to the Uniform Child Custody Jurisdiction [sic] Act (UCCJEA).*" (Emphasis added.)

7

This provision notes that the parties agreed, and the court ordered, that Kansas would retain jurisdiction over future child custody issues, most likely because it was known at the time that Heidi and the kids were moving to Arkansas while David was planning to move to Utah. But this provision specifically preserved the parties' rights to seek post-decree relief in some other jurisdiction pursuant to the provisions of the UCCJEA. In short, the divorce decree does not bind Heidi and David to our state's courts.

*Subject Matter Jurisdiction Under The UCCJEA*

K.S.A. 2014 Supp. 23-3218(a) allows a district court to change or modify a prior child custody order when a material change of circumstances is shown "[s]ubject to the provisions of the uniform child custody jurisdiction and enforcement act . . . ." The Act, more particularly K.S.A. 2014 Supp. 23-37,202(a), states:

> "Except as otherwise provided in K.S.A. 2014 Supp. 23-37,204 [pertaining to temporary emergency jurisdiction], and amendments thereto, a court of this state which has made a child-custody determination consistent with K.S.A. 2014 Supp. 37,201 [an initial child custody determination] or 23-37,203 [modification of another state's child custody determination], and amendments thereto, has exclusive, continuing jurisdiction over the determination until:
>
> "(1) A court of this state determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> "(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."

Here, the initial child custody determination was made in Kansas. But in its October 2013 order, the district court found that "neither the parties nor the children presently reside in the State of Kansas." By the plain language of K.S.A. 23-37,202(a)(2),

8

upon making this finding the Butler County District Court divested itself of its *exclusive*, continuing authority to hear and decide this matter. See *In re Marriage of Ruth*, 32 Kan. App. 2d 416, 423, 83 P.3d 1248, *rev. denied* 278 Kan. 845 (2004) (finding that a state other than the state issuing the initial custody order may gain jurisdiction to modify child custody if either court determines that the child's parents do not presently reside in the issuing state). Thus, at the time of these post-divorce proceedings the district court no longer had exclusive, continuing jurisdiction in this matter.

According to K.S.A. 2014 Supp. 23-37,202(b), "A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under K.S.A. 2014 Supp. 23-37,201."

*Jurisdiction under K.S.A. 23-37,201(a)*

Under K.S.A. 2014 Supp. 23-37,201(a), the Kansas court could have made an initial custody determination only if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under K.S.A. 2014 Supp. 23-37,207 or 23-37,208, and amendments thereto, and:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

9

"(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under K.S.A. 2014 Supp. 23-37,207 or 23-37,208, and amendments thereto; or

"(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

Subsections (1), (2), (3), and (4) are alternative bases for the court to exercise jurisdiction in a child custody or placement dispute. If any of these bases applied to the Kansas court, the Kansas court had jurisdiction to entertain David's motion.

*Subsection (1)*

Subsection (1) did not apply. The children had been living in Arkansas with Heidi since 2011. Kansas was not the home state of the children and neither parent lived in Kansas when David filed his motion. Thus, subsection (1) cannot be a basis for the Kansas court to exercise jurisdiction.

*Subsection (2)*

The first part of subsection (2) applies because Arkansas, the home state of the children at the time, declined to exercise jurisdiction on the ground that Kansas was the more appropriate forum. But that was not enough. The statute also requires the Kansas court to satisfy both (2)(A) and (2)(B) in order to exercise jurisdiction over this custody dispute. But under (2)(A) neither the children nor either parent had a significant connection with Kansas anymore. (2)(B) becomes moot because the Kansas court would have to satisfy both (2)(A) and (2)(B) to be able to exercise jurisdiction in this instance. Thus, subsection (2) in its entirety does not apply.

10

Subsection (3) provides a basis for the Kansas court to act because the only other state having concurrent jurisdiction, Arkansas, declined to exercise its jurisdiction because Kansas was the more appropriate forum to resolve this placement issue. This is based on the portions of the Arkansas court's order read into the record at the July 15, 2013, hearing. We do not have the complete text of that order. Heidi failed to include the order in the record on appeal. Heidi had the burden to designate the Arkansas court order as part of the record if she intended to challenge its express intent to defer to the Kansas court on this issue. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

We note that the Butler County District Court was not at liberty to determine that the Arkansas court was an inconvenient forum to hear this matter. K.S.A 23-37,207(a) states:

> "A court of this state which has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that *it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum*."

By its plain language, K.S.A 23-37,207(a) did not authorize the Kansas court to make a determination that the Arkansas court was an inconvenient forum. It merely would have allowed the Kansas court to find that Butler County was an inconvenient forum.

While it is possible that the Arkansas court mistakenly decided to defer to the Kansas court because of the Kansas court's prior ruling that Arkansas was an inconvenient forum (a finding the Kansas court had no authority to make under the UCCJEA), to reach that conclusion without being able to consider the entire order from

11

the Arkansas court would call for pure speculation on our part. Moreover, after closely examining Heidi's appellate brief we find no argument supporting any such conclusion. As a final point, such an argument would ask us to consider an error by the Arkansas court, a matter far from our purview. That is a matter Heidi could have taken up with the Arkansas Court of Appeals.

*Subsection (4)*

Subsection (4) does not apply because Arkansas had jurisdiction under subsection (1), but the issue becomes moot for our purposes because the alternative provision of subsection (3) provides a basis for the Kansas court to act.

*Summary*

To summarize, under K.S.A. 2014 Supp. 23-3218(a) changes of child custody or placement are subject to the provisions of the UCCJEA. Under K.S.A. 23-37,202(a)(2), the Kansas court that made the initial custody determination in the divorce decree had exclusive continuing jurisdiction over custody and placement issues until the children and the parents no longer lived in Kansas. When the children and the parents move away, the Kansas court could modify custody only if it still had the power to make an initial custody determination. To have that power, the Kansas court would have to meet one of the four conditions listed in K.S.A. 2014 Supp. 23-37,201(a). Here, based on the appellate record, the Kansas court met the conditions of subsection (3), so the Kansas court retained continuing but nonexclusive jurisdiction to consider David's motion. Thus, we conclude that the district court did not err in exercising jurisdiction in this matter.

■ *Attorney Fees*

Heidi claims the district court erred in not granting her attorney fees pursuant to

12

K.S.A. 2014 Supp. 23-37,312(a), which states:

> "The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate."

Because we conclude that the district court had jurisdiction to consider David's motion, David prevailed on the issue of jurisdiction and Heidi did not.

Besides, K.S.A. 2014 Supp. 23-37,312 is found in the section containing enforcement provisions of the Act. In that enforcement section, K.S.A. 2014 Supp. 23-37,301 defines a petitioner as "a person who seeks enforcement of an order for return of a child under the Hague Convention on the civil aspects of international child abduction or enforcement of a child-custody determination." It defines a respondent as "a person against whom a proceeding has been commenced for enforcement of an order for return of a child under the Hague Convention on the civil aspects of international child abduction or enforcement of a child-custody determination." Thus, it appears that the prevailing party in K.S.A. 23-37,312(a) is a party who has prevailed in an enforcement proceeding. Heidi was not such a party. She was not seeking enforcement of a child custody order. To the contrary, she challenged the validity of a child custody order.

The district court did not err in denying attorney fees for Heidi.

Affirmed.

* * *

13

MALONE, C.J., dissenting:  I respectfully dissent because I believe that the Kansas judge has failed to comply with the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The record reflects that the Arkansas court initially was willing to accept jurisdiction over the custody dispute. This makes sense because the petitioner and the children reside in Arkansas. I believe the record is sufficiently clear that the Arkansas court later declined jurisdiction more than likely because it had been informed that Kansas stubbornly was not relinquishing jurisdiction. But this decision was made by a Kansas judge who misconstrued the divorce decree and improperly found that Arkansas was an inconvenient forum.

In denying the petitioner's motion for reconsideration, the Kansas judge found that it was "not in the spirit of the UCCJEA nor judicial economy for this Court to decline jurisdiction so that Arkansas can claim jurisdiction and allow the Petitioner to move to Hawaii." Apparently the Kansas judge has presupposed that the Arkansas court is going to allow the petitioner to move with the children to Hawaii. The Kansas judge further found:  "It is not in the public policy of the State of Kansas to allow such unfettered mobility of a residential parent." This finding has nothing to do with the jurisdictional issue before the court; rather, it goes to the merits of the custody dispute and whether the petitioner should be allowed to move with the children to Hawaii.

The undisputed fact that neither the parties nor the children presently reside in Kansas has divested this state of exclusive, continuing jurisdiction over the case, a point that was never acknowledged by the Kansas judge. The only legal ground for Kansas to exercise jurisdiction over the custody dispute is the subsequent "order" from the Arkansas court declining to exercise jurisdiction. The Arkansas order was not entered until after the Kansas judge initially had decided that Kansas was retaining jurisdiction over the case. Although a portion of the order was read into the record at the July 17, 2014, hearing, we do not know the circumstances of how or why this order was entered in Arkansas. Moreover, the written order was never presented to the district court in Kansas and the

14

order is not included in the record on appeal. I believe that the absence of this order should work against the respondent, not the petitioner.

There is no indication in the record that the Kansas judge ever attempted to communicate with the Arkansas court as is contemplated by K.S.A. 2014 Supp. 23-37,110. In the end, the Kansas judge has decided that Kansas is the proper state to exercise jurisdiction over the custody dispute even though the children and neither parent has resided in Kansas since the divorce was granted in 2011. This case certainly does not provide a good example of how the UCCJEA is supposed to work. I would reverse and remand with directions to stay the proceedings in order to allow the Arkansas court to reconsider its decision to decline jurisdiction, or at least to allow the parties to make a better record of how and why the order was entered in Arkansas.