BEVERLY ANN WINDSOR vs. JAMES HARRY WINDSOR.

No. 97-P-201.

Barnstable. April 14, 1998. - October 22, 1998.

Present: WARNER, C.J., GILLERMAN, & LAURENCE, JJ.

*Due Process of Law,* Jurisdiction over nonresident. *Jurisdiction,* Nonresident, Long-arm statute. *Probate Court,* Jurisdiction.

The record of a divorce proceeding did not support a Probate Court judge's assertion of personal jurisdiction over the out-of-State husband or his property for purposes of support orders or a division of property, either under G. L. c. 223A, § 3(*g*), as amended by St. 1993, c. 460, § 86 [651-652, 653-655], or under G. L. c. 209D, § 2-201(5) [655-656].

COMPLAINT for divorce filed in the Barnstable Division of the Probate and Family Court Department on June 9, 1995.

A motion to dismiss was heard by *Robert E. Terry,* J., and the case was heard by him.

*Robert C. Lawless* for the defendant.

*Jeremy M. Carter* for the plaintiff.

LAURENCE, J. In April, 1959, Beverly Ann Windsor (wife) married James Harry Windsor (husband) in Massachusetts.[1] The couple left Massachusetts in 1966. In June, 1977, while living in Florida and pregnant, the wife left the husband and moved back to Massachusetts, where a daughter was born in September, 1977. In June, 1995, the wife filed a complaint for divorce in Barnstable Probate and Family Court, alleging cruel and abusive treatment by the husband. In her complaint, she requested that the court "order a suitable amount for [her] support" and that of the parties' then seventeen year old daughter who lived with her.

The husband, who had resided since 1975 in Florida, where

---

[1]The facts are taken from the undisputed portions of the record, including the Probate Court's findings of fact not challenged by the appellant husband.

he was served, filed a "motion to dismiss [the complaint] pursuant to 12(b)(2) for lack of personal jurisdiction," arguing insufficient contacts with Massachusetts. After a non-evidentiary hearing in October, 1995, attended by the wife but not the husband, the court denied the motion. (The court entered findings of fact and conclusions of law on its denial on February 7, 1996.) The husband took no further part in the proceedings, except to assert once again the court's lack of in personam jurisdiction in opposition to a contempt complaint brought by the wife following the husband's failure to comply with temporary support orders. On October 23, 1996, the court granted the wife a divorce and ordered the husband to pay weekly child support, to maintain medical insurance for the wife and their daughter, and to pay one-half of the daughter's educational expenses. In addition, the court awarded the wife a one-half interest in the husband's military pension plan.[2]

In his appeal, the husband principally contends that the court erred by denying his motion to dismiss and ruling that it could exercise personal jurisdiction over him.[3] We agree with his contentions, because the wife failed to provide the court (as was her burden) with facts sufficient to establish the in personam

---

[2]The final judgment of divorce ultimately entered in the action, which was a precondition to the husband's entitlement to our hearing his appeal, see *Mancuso* v. *Mancuso*, 10 Mass. App. Ct. 395, 398-402 (1980), was not included in the record appendix, contrary to Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979). It was, however, attached to the entry statement in our clerk's office folder, and we have accordingly considered it.

[3]The husband conceded, both below and here (in oral argument), that the Probate Court had jurisdiction to order dissolution of the parties' Massachusetts marriage on the complaint of the Massachusetts domiciliary wife. See G. L. c. 208, §§ 4 & 5; *Williams* v. *North Carolina*, 317 U.S. 287 (1942). Consequently, his motion to dismiss the wife's entire complaint under Mass. R.Dom.Rel.P. 12(b)(2) (1975), was technically inappropriate, since he has consistently challenged not the court's in rem jurisdiction to grant the divorce but only its assertion of personal jurisdiction over him and his property. See 2 Kindregan & Inker, Family Law and Practice § 26.15, at 52 n.6 (2d ed. 1996) (suggesting the propriety of raising the defense of lack of in personam jurisdiction in the responsive pleading rather than by motion). Presumably, the husband feared expressly acceding to jurisdiction to determine the divorce because it might be deemed an admission that the cause of action occurred within Massachusetts (see G. L. c. 208, §§ 4 & 5), whereas he asserts, in challenging long-arm jurisdiction under G. L. c. 223A, § 3(*g*), that any cause or claim for child support and property settlement arose when the parties resided in Florida, not Massachusetts. See section 3.a., *infra.*

jurisdiction that was a prerequisite to the court's right to issue binding orders for support and property division against him.[4]

1. *Jurisdictional fundamentals.* To mandate a support obligation or property division as part of a divorce decree, the court must have in personam jurisdiction over the obligor spouse. See *Vanderbilt* v. *Vanderbilt*, 354 U.S. 416, 418 (1957); *Kulko* v. *Superior Ct. of Cal.*, 436 U.S. 84, 91 (1978); *Blitzer* v. *Blitzer*, 361 Mass. 780, 782-783 (1972); *Morrill* v. *Tong*, 390 Mass. 120, 129 (1983). "Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). A paramount due process requirement is that there exist "minimum contacts" between the nonresident defendant and the forum state. *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316-317 (1945). Such contacts must not be merely casual or accidental, but must rather reflect acts performed by the defendant "by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958).

Whether the exercise of personal jurisdiction over a defendant is permissible under this analysis is dependent upon the particular facts of each case. *Good Hope Indus., Inc.*, supra at 2. When, as here, the assertion of in personam jurisdiction has been challenged under rule 12(b)(2), "the plaintiff[] bear[s] the

---

[4]The wife asks us to reject the husband's appeal on the ground that he waived his right to challenge personal jurisdiction by filing his motion to dismiss sixty-four days after service of the complaint upon him without seeking an enlargement of time. See Mass.R.Dom.Rel.P. 12(a)(1), (g), & (h)(1) (1975). Suffice it to say that this argument was not made to or mentioned by the court below, which heard and decided the personal jurisdiction issue on its factual merits, so we will not address it. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 & n.25 (1991). The argument is also premised on an overly strict interpretation of rule 12 not required by its language. See 5A Wright & Miller, Federal Practice and Procedure § 1391, at 754-755 (2d ed. 1990). Cf. *Williams* v. *Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986); *Reynolds* v. *International Amateur Athletic Fedn.*, 23 F.3d 1110, 1120 (6th Cir. 1994), cert. denied, 513 U.S. 962 (1994) (defense of lack of personal jurisdiction is not waived by default).

burden of establishing sufficient facts on which to predicate [that] jurisdiction." *Good Hope Indus., Inc., supra* at 3. "In resolving the issue [of whether the plaintiff has satisfied her burden], we accept as true only the uncontroverted facts as they appear in the materials which were before the . . . judge." *Heins* v. *Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG*, 26 Mass. App. Ct. 14, 16 (1988).

2. *The facts as to jurisdiction.* The wife's unverified complaint alleged that the parties were married at Otis Air Force Base (located on Cape Cod) in April, 1959. They had four children, three of whom were emancipated at the time of the complaint. The couple last lived together in Florida in June, 1977. "On or about June, 1977, the parties suffered an irretrievable breakdown of the marriage. The [husband] was also guilty of cruel and abusive treatment on this date and other divers dates and occasions." The youngest child was born in September, 1977. The wife filed no affidavit elaborating upon any of these facts.

The husband supported his motion to dismiss with his affidavit. It stated that the couple had last lived in Massachusetts in 1966. Thereafter, he was transferred to various military bases, eventually moving to Florida with his wife in 1975. He has resided in Florida since 1975. The wife "left [him] in Florida" in June, 1977. The parties' youngest child was conceived in Florida and born in Massachusetts in September, 1977. He has never owned any real estate in Massachusetts and has transacted no business in Massachusetts since 1966. He has visited Massachusetts only once since 1977, to see his daughter graduate from Falmouth High School (apparently in June, 1995). The wife filed no affidavit controverting any of these averments.

The court's hearing on the motion to dismiss occupies only six pages of transcript. It essentially consisted of arguments of counsel and questions by the court. No witnesses were sworn nor any testimony taken. The only evidentiary matter presented was the husband's affidavit in support of his motion to dismiss. The wife was present at the hearing but did not testify under oath.[5]

3. *The motion to dismiss.* The court's determination of the

---

[5]The wife interjected two brief, unsolicited comments at the hearing to buttress representations by her counsel as to the child's educational status (attending college) and the defendant's supposed voluntary monthly payments of child support (from Florida) for eighteen years. The "fact" of the voluntary support payments was never established (so far as this record reveals) by af-

husband's motion to dismiss — asserting its exercise of jurisdiction over him on two grounds — was not supported by the exceedingly meager record.

a. The court first concluded that in personam jurisdiction lay under § 3(*g*) of our long-arm statute, G. L. c. 223A, "since the Defendant 'maintain[ed] a domicile in the Commonwealth while party to a marital relationship out of which arises the claim for divorce,' namely cruel and abusive treatment."[6] No appellate decision appears to have discussed the present version of § 3(*g*) relied on by the court. Its plain language would confer jurisdiction over the nonresident husband here only if the wife could demonstrate, at the time of the motion to dismiss, that the cause of action for the 1995 divorce arose while the parties maintained a marital domicile in Massachusetts, namely from 1959 to 1966. She failed, however, to allege, much less to establish, any facts bringing the husband within § 3(*g*).

The unverified complaint identifies no conduct by the husband giving rise to the divorce between 1959 and 1966, and describes no cruel or abusive treatment by him during that period of time. The wife failed to submit an affidavit specifying the dates or occasions when any act constituting the claimed cruel and abusive

___

fidavit, testimony, or documentation as of the date the court denied the motion to dismiss. The wife's opposition to the husband's motion contended that the husband "has had substantial contacts with the Commonwealth," but identified only three: he "recently appeared in Massachusetts to attend his daughter's high school graduation"; he "recently submitted checks to the Plaintiff covering a partial college tuition payment"; and he had supposedly made a general appearance by virtue of his counsel's filing the motion attacking jurisdiction. No mention was made of the purported eighteen years of monthly voluntary support payments. In his brief on appeal, however, the husband appears to concede the fact of having "sent voluntary payments to the plaintiff," at least for the purpose of determining whether personal jurisdiction existed under G. L. c. 223A, § 3(*a*), on the basis of his "transacting . . . business" in Massachusetts. See note 9, *infra*.

[6]Section 3(*g*) empowers the court to exercise personal jurisdiction over any person "who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . maintaining a domicile in this commonwealth while a party to a personal or marital relationship out of which arises a claim for divorce, alimony, property settlement, parentage of a child, child support or child custody; or the commission of any act giving rise to such a claim. . . ." This provision was inserted by St. 1993, c. 460, § 86, which completely rewrote the original § 3(*g*), that, inter alia, had contained a requirement of recent marital residence, i.e., that the parties' marital domicile had been in Massachusetts for at least one year within the two years immediately preceding commencement of the action.

treatment occurred, and no evidence on the issue was introduced at the hearing on the motion to dismiss. Consequently, no facts exist on this record justifying the court's assertion that the cruel and abusive treatment complained of by the wife occurred while the parties maintained a marital domicile in Massachusetts. The record did not, therefore, permit the court's exercise of jurisdiction over the husband under G. L. c. 223A, § 3(*g*).[7]

b. The court saw a second and independent basis for jurisdiction over the husband in G. L. c. 209D, § 2-201(5), "since 'the child resides in the Commonwealth as a result of acts of the [husband],' namely continued cruel and abusive treatment of the Mother which caused her and the children to flee to Massachusetts."[8] We agree with the husband that, once again, no facts were presented by the wife, nor developed in the record, on which the court could base a finding bringing the case within § 2-201(5).

No affidavit, testimony, or authenticated or verified document even intimates, let alone establishes, that the wife and her children were caused "to flee" from Florida to Massachusetts as a result of any cruel and abusive acts of the husband or any "directive" he made. Contrast *Franklin* v. *Virginia*, 27 Va. App. 136 (1998) (the only other State decision construing the "acts and directives" jurisdictional provision of the Uniform Interstate Family Support Act [UIFSA], on which G. L. c. 209D, § 2-201[5], was modeled, holding that jurisdiction was properly exercised on proof that after physically assaulting the wife, the husband had ordered her and their children out of their home in Africa, causing the wife to have to return to their prior home in Virginia; the Virginia court contrasted the situation in *Franklin* with several cases decided under a pre-UIFSA Texas statute

[7]Our analysis makes it unnecessary to decide whether, as the husband argues, it would offend "every notion of due process" and fair play to base personal jurisdiction on one or more vague and unspecific incidents that might have occurred over twenty-nine years earlier in Massachusetts, especially when the parties continued to live together for eleven more years. His argument, in any event, is devoid of citation to any supportive authority, contrary to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[8]Section 2-201(5) of G. L. c. 209D (the Massachusetts codification of the Uniform Interstate Family Support Act), as pertinent to the instant case, authorized jurisdiction to establish, enforce, or modify a child support order against a nonresident if "the child resides in the commonwealth as a result of the acts or directives of the [nonresident]." G. L. c. 209D, § 2-201(5), as inserted by St. 1995, c. 5, § 87.

similar to § 2-201[5], in which the fact that nonresident husbands had acquiesced or had registered no objection when the mother moved out of State with the child was held insufficient to confer personal jurisdiction on the Texas courts).

Nor does anything in the record show that whatever causative conduct the court thought attributable to the husband was the sort of affirmative, purposeful action which is necessary to satisfy the demands of due process. Compare *Kulko* v. *Superior Ct. of Cal.*, 436 U.S. at 93-94 (New York father's acquiescence in daughter's living with mother in California was not purposeful enough to confer personal jurisdiction on California courts to issue child support orders against him under the due process clause). See comment to UIFSA § 201, 9 U.L.A. 345 (Supp. 1998) (noting that in circumstances almost identical to those of the instant case — parents and child live in State A for many years, then move to State B for many years, then one parent unilaterally decides to return with child to State A — many, and perhaps all, State courts will conclude that assertion of personal jurisdiction over the absent parent would offend due process).

4. *Conclusion.* The wife having failed to discharge her burden of establishing sufficient facts upon which to base personal jurisdiction over the husband, those provisions of the "corrected judgment of divorce nisi" dated October 23, 1996, ordering various dispositions of the husband's assets, namely paragraphs numbered 1, 3, 4, 8, 11, and 13, are vacated. The remainder of that judgment is affirmed.[9]

*So ordered.*

---

[9]In view of our reasoning, there is no need to address the husband's other contentions, most of which are too conclusory and bereft of authority to rise to the level of adequate appellate argument under Mass.R.A.P. 16(a)(4). We do agree, however, with his argument that two other long-arm provisions, unmentioned by the Probate Court, do not afford alternative grounds for exercising in personam jurisdiction over him. Recognizing that we may affirm a correct decision even if the trial court's stated ground is unsound, *West Broadway Task Force* v. *Boston Hous. Authy.*, 414 Mass. 394, 398 (1993), the husband correctly asserts that neither G. L. c. 223A, § 3(*a*) (conferring jurisdiction "arising from . . . [the defendant's] transacting any business in this commonwealth"), nor c. 223A, § 3(*h*) (conferring jurisdiction to modify or enforce previous domestic relations orders entered in actions in which the court had personal jurisdiction over the defendant) applies to the present facts. Even were the husband's attendance at his daughter's graduation (but see *Kulko* v. *Superior Ct. of Cal.*, 436 U.S. at 92-93), combined with his hypothesized support payments (but see *Morrill* v. *Tong*, 390 Mass. at 130-

133), deemed sufficiently purposeful acts of transacting business to pass constitutional muster (which we doubt but do not decide), § 3(*a*) would not apply because the wife's claim here did not arise from that transaction of business. See *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767, 770-772 (1994). Section 3(*h*) does not sanction in personam jurisdiction because there is no evidence in the record that the Probate Court ever entered any domestic relations order against the husband in any action instituted prior to the wife's 1995 complaint.