## Naomi J. Miller *vs.* Hugh S. Miller.

Hampshire. November 9, 2006. - February 9, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Jurisdiction,* Probate Court, Personal, Long-arm statute. *Probate Court,* Jurisdiction, Divorce. *Divorce and Separation,* Jurisdiction. *Due Process of Law,* Jurisdiction over nonresident.

In a divorce action involving a wife living in Massachusetts and a husband living in Arizona, the Probate and Family Court had subject matter jurisdiction pursuant to G. L. c. 208, §§ 4 and 5, where the wife introduced sufficient uncontroverted evidence to meet her burden of demonstrating that the marriage was not irretrievably broken until after she moved to Massachusetts. [325-327]

In a divorce action involving a wife living in Massachusetts and a husband living in Arizona, the Probate and Family Court had personal jurisdiction over the husband, where the requirements of the long-arm statute, G. L. c. 223A, § 3 (g), were satisfied, in that conversations between the husband and wife that took place in Massachusetts were an act that gave rise to the wife's claim for divorce based on the irretrievable breakdown of the marriage [327-331]; and where the husband had enough contacts with Massachusetts to meet the constitutional requirements of due process [331-333].

Complaint for divorce filed in the Hampshire Division of the Probate and Family Court Department on February 14, 2005.

A motion to dismiss was heard by *Gail L. Perlman,* J., and a question of law was reported by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jacqueline Y. Parker (Susan Klueppel* with her) for the husband.

*Carol Booth (Linda S. Fidnick* with her) for the wife.

*Thomas F. Reilly,* Attorney General, *& Marilyn Ray Smith,* Special Assistant Attorney General, for Department of Revenue, child support enforcement division, amicus curiae, submitted a brief.

Ireland, J. We transferred this case from the Appeals Court to

consider a reported question from a judge in the Probate and Family Court whether her interlocutory ruling that the court had personal jurisdiction over the defendant husband pursuant to G. L. c. 223A, § 3 (*g*), was proper.[1] The husband lives in Arizona and the wife lives in Massachusetts. Because we conclude that the statute's plain language does not require that a husband and wife both be domiciled in the Commonwealth at the time an act giving rise to a claim for divorce occurs, and that the requirements of due process have been met in this case, the judge properly found that the wife has met her burden to prove that the court has personal jurisdiction over the husband. We also conclude that the court has subject matter jurisdiction over the case. Accordingly, we remand the case for further proceedings consistent with this opinion.

1. *Facts and procedural history.* We accept as true the essential uncontroverted facts that were before the judge. *Heins* v. *Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG*, 26 Mass. App. Ct. 14, 16 (1988), citing *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 104 n.4 (1980).

The parties were married in New Jersey in 1979. They lived in Massachusetts from sometime after their marriage until 1989, when they moved to Arizona. She is a professor and he is a physician. The parties have four children, two of whom were born before they moved to Arizona.

Because of a health problem, the wife had to move from Arizona. The wife accepted employment at Smith College in May, 2004, and moved with the children to Northampton in August, 2004. The wife filed for divorce in February, 2005, pursuant to G. L. c. 208, § 1B,[2] stating in her complaint that an

---

[1]We acknowledge receipt of the amicus brief of the Department of Revenue, child support enforcement division.

We allowed the amicus brief to be filed after oral argument, and allowed the husband to file a reply brief. The husband filed a reply brief along with a motion to exceed the ten-page limit the court imposed. The wife filed a motion to strike the reply brief on the grounds that it was double the number of pages allowed by this court and repetitive of his brief, and that it asserted facts that are not in evidence. We allow only so much of the wife's motion to strike as it relates to any assertions the husband made to facts not in evidence.

[2]General Laws c. 208, § 1B, allows one party to a marriage to file a complaint for divorce.

irretrievable breakdown of the marriage occurred in November and December, 2004.

The husband filed a motion to dismiss pursuant to Mass. R. Dom. Rel. P. 12 (b), on grounds that the court lacked both subject matter and personal jurisdiction. The facts in the husband's motion to dismiss were verified. In opposition to the motion to dismiss, the wife submitted a signed affidavit and various documents showing that the husband, inter alia, had looked for houses for sale in Northampton and Amherst with the wife, signed various documents enrolling their children in schools in Northampton,[3] and signed forms to open a safe deposit box and a joint checking account with the wife, and that two of the family automobiles were registered and insured in his name in Massachusetts. The wife rented a house from Smith College, which she and the husband viewed together, in her name only. The husband requested a key that was provided to him in the fall of 2004.[4] Moreover, the husband interviewed for positions in Massachusetts, New York, and Connecticut.

The husband and wife hosted a going away party for the family before they left Arizona. In her affidavit, the wife also stated that in July, 2004, after she had accepted the position at Smith College, the family took a trip to Europe. In addition, she averred that during the husband's numerous visits to Massachusetts, they lived together as husband and wife until December, 2004. The wife stated that "after December 2004 I understood our marriage to be 'irretrievably broken.' "

The wife also submitted two affidavits by third parties. One affiant stated that because she was aware that the husband had interviewed for a position at Bay State Medical Center in Springfield, she and the husband discussed various medical practices he was considering joining, as well as commuting issues involved. The husband also told her that he hoped to move to New England "before early winter." The other affiant stated

---

[3]In his brief, the husband argues that at least one of his signatures on the school forms was forged. However, this assertion is not based on evidence, but on an argument in the husband's opposition to one of the wife's motions to alter or amend the judge's findings.

[4]In his briefs to this court, the husband claims several times that the wife never gave him a key, in direct contradiction of his statement in his verified motion to dismiss.

that she saw the husband and wife on three occasions between June and December, 2004. She stated that the husband talked to her about his job interviews in New England, his hope to rejoin his family by the fall of 2004, and the fact that, in December, 2004, both the husband and wife were excited that they found a buyer for their home in Arizona.[5]

In May, 2005, the judge held a nonevidentiary hearing on the husband's motion to dismiss. She found that the court had subject matter jurisdiction pursuant to G. L. c. 208, § 4, because the wife determined that the marriage was irretrievably broken down while she was domiciled in Massachusetts. However, the judge stated that according to the holding in *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650 (1998), the court did not have personal jurisdiction because the claim for divorce did not arise while the parties were maintaining a marital domicil in Massachusetts.

The judge amended her initial findings three times between August and November, 2005, in response to motions to alter and amend the judge's findings and oppositions thereto that the wife and husband filed. In addition, because the judge determined that the court had jurisdiction to hear all matters relating to the care and custody of the minor children, G. L. c. 209B, the husband filed a motion for custody of the children and submitted a supporting affidavit, which was unsigned.[6] No evidentiary hearing was held nor does it appear from the record that any other hearing was held after May, 2005. It is the judge's further amended findings of November, 2005, on which her report is based.

In making her further amended findings, the judge relied on the wife's affidavit, which reported the content of conversations the wife claimed she had with the husband in Massachusetts, as well as an electronic mail message (e-mail) the husband sent to the wife in March, 2005 (i.e., after the wife filed for divorce).

---

[5]Concerning this discussion on the sale of the house, the judge noted, "Notwithstanding the wife's possible hindsight as to the exact point of irretrievable breakdown of the marriage, the affidavit . . . indicates . . . an intact family [as of December 30, 2004]."

[6]We give no weight to the husband's unsigned affidavit. See *Demoulas* v. *Demoulas*, 432 Mass. 43, 54 (2000).

The wife reported that in November, 2004, the husband was upset at her "wrongfully assuming the mantle of the family authority and decision-maker, and that her actions were 'violating God's will.' " In December, 2004, the wife refused to share a marital bed with the husband and when she asked how he could, in his criticism of her, disregard her medical needs, he told her that he believed that they were "irrelevant" and it was then that the wife reported that she "fully understood that [the] marriage had suffered an 'irretrievable breakdown.' " The judge also found that the husband's assertion that the marriage irretrievably broke down in Arizona was not credible given the e-mail he sent to the wife in March, 2005, in which he asked her to reconsider her decision to go forward with the divorce and stated that he believed they should reconcile.

The judge found that the cause for divorce occurred in Massachusetts. The judge also found that the wife changed her domicil from Arizona to Massachusetts but the husband did not, although he may have intended to do so through his efforts to obtain employment and join his family.

In addressing whether the court had personal jurisdiction over the husband, the judge discussed the holdings in *Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212 (2005), cert. denied, 126 S. Ct. 2888 (2006),[7] and *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650 (1998), and stated that although the court in the *Unal* case stated that its decision was not inconsistent with the *Windsor* decision, she was unable to determine which Appeals Court precedent applied to the circumstances of this case. The judge stated that, although the parties could challenge personal jurisdiction after the entry of final judgment, she decided to report the question about personal jurisdiction, pursuant to G. L. c. 215, § 13, and Mass. R. Dom. Rel. P. 64, because she concluded that it would be unfair to both parties to make them go through a "protracted and expensive litigation" first. See *Cepeda* v. *Kass*, 62 Mass. App. Ct. 732, 739-740 (2004) (in deciding motion to dismiss for lack of personal jurisdiction, court has discretion to determine personal jurisdiction by

---

[7]*Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212 (2005), cert. denied, 126 S. Ct. 2888 (2006), was decided after the judge issued her initial findings and order.

preponderance of evidence without waiting for trial on merits). For purposes of the report the judge ruled that the court "shall exercise personal jurisdiction over [the husband]." She also stayed all proceedings.

2. *Discussion.*[8] Although the sole question reported concerns whether the Probate and Family Court has personal jurisdiction over the husband, we also address the husband's request that we consider whether the judge was correct in determining that the court had subject matter jurisdiction over the case, as it would be a waste of judicial resources for that issue to remain unresolved. See *ROPT Ltd. Partnership* v. *Katin*, 431 Mass. 601, 607 (2000) (party may raise subject matter jurisdiction at any time); *Nature Church* v. *Assessors of Belchertown*, 384 Mass. 811, 812 (1981) (courts have "both the power and the obligation to resolve problems of subject matter jurisdiction whenever they become apparent"). Both parties have briefed this threshold issue.

The burden is on the party asserting jurisdiction to prove jurisdictional facts. See *Caffyn* v. *Caffyn*, 441 Mass. 487, 491 (2004) (subject matter jurisdiction); *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 3 (1979) (personal jurisdiction).

a. *Subject matter jurisdiction.* The judge found that the court had subject matter jurisdiction pursuant to G. L. c. 208, §§ 4 and 5. Section 4 provides, in relevant part, that a divorce may be granted to parties if a cause for divorce occurs in another jurisdiction where the parties have "lived together as husband and wife in this commonwealth" and where one party lived in the Commonwealth when the cause for divorce occurred. Section 5 provides that a divorce may be granted if the plaintiff is domiciled in the Commonwealth when the action is commenced, the cause occurred in the Commonwealth, and the plaintiff did not come to the Commonwealth for the purpose of obtaining a divorce.[9]

---

[8]The wife submitted a nonconforming brief to the Appeals Court that was accepted by a Justice of that court. Once this court decides to transfer a case to this court, all briefs must conform to the Massachusetts Rules of Appellate Procedure.

[9]We note that the wife now has satisfied the alternative one-year residency requirement of G. L. c. 208, § 5, "and presumably may now file a proper

The parties do not contest that the wife was domiciled in Massachusetts at the time she commenced her action for divorce or that she did not come to the Commonwealth in order to obtain a divorce here. The husband argues that the marriage was irretrievably broken when the wife decided to move to Massachusetts and that the judge relied on inadmissible marital conversations to find the facts necessary to show that the marriage broke down in Massachusetts rather than in Arizona.

General Laws c. 233, § 20, First, states that "neither husband nor wife shall testify as to private conversations with the other," providing a marital disqualification of private conversations even if both spouses want the content admitted in evidence. *Gallagher* v. *Goldstein*, 402 Mass. 457, 459 (1988). However, if no objection is made when such testimony is introduced, then the testimony may be admitted for its full probative value. *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 611 n.3 (1987), citing *Mac-Donald's Case*, 277 Mass. 418, 422 (1931). The judge was entitled to consider the content of the conversations because the husband did not file a motion to strike the portions of the wife's affidavit that referenced their conversations. The husband's claim that he could not object because this was not an evidentiary hearing or trial is without merit. *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985), quoting *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976) (in motion for summary judgment, "[i]f a party does not move to strike the defective portion of an opponent's affidavit, in [her] discretion a judge may rely on" facts stated on belief rather than on requisite personal knowledge). The content of those conversations, in which the husband indicated that the wife should not be the family's authority and decision maker and demonstrated a lack of compassion for the wife's health problem, are sufficient to justify the judge's conclusion that the conversations led to the wife's conclusion that the marriage was irretrievably broken.

However, even if we exclude consideration of the contents of the conversations, the result would be the same. The fact that

divorce complaint under § 5 even if the 'cause' for divorce did not occur in Massachusetts." *Caffyn* v. *Caffyn*, 441 Mass. 487, 491 n.10 (2004). The record indicates that the parties have signed stipulations agreeing that the wife would neither serve nor serve anew any complaint while the husband is in Massachusetts.

the conversations took place is admissible. *Gallagher* v. *Gold-stein, supra,* citing P.J. Liacos, Massachusetts Evidence 181 (5th ed. 1981 & Supp. 1985). We conclude that the wife introduced sufficient uncontroverted evidence to meet her burden that the marriage was not irretrievably broken until after she moved to Massachusetts. *Caffyn* v. *Caffyn, supra* at 495 (sufficient pursuant to G. L. c. 208, § 5, that party "subjectively decide[s] that [the] marriage is over and there is no hope of reconciliation"). As discussed, the husband told two third parties that he was planning to move to Massachusetts and was looking for a job in the area in order to join his family. The family took a trip to Europe after the wife had decided to move. The husband looked at area properties for sale with the wife, visited the family throughout the fall, requested a key to the Northampton house, and does not controvert that he and his wife lived as husband and wife on his visits to Northampton until the wife refused to share a marital bed with him after some conversations she had with him in November and December, 2004. This uncontroverted evidence is enough for the wife to demonstrate that the marriage was intact when she moved to Massachusetts and that she concluded that the marriage was irretrievably broken as a result of conversations she had with her husband. *Id.*

The husband also argues that, although a subjective test for determining when a marriage is irretrievably broken may be appropriate in some circumstances, as in *Caffyn* v. *Caffyn, supra,* a more workable rule would be for the court to use the point when the wife left Arizona. We disagree. There is no requirement that husbands and wives occupy the same home; indeed, as the facts of this case demonstrate, personal or professional circumstances may make it impossible for spouses to do so. See generally *Katz* v. *Katz,* 330 Mass. 635, 639 (1953) (wife may acquire domicil apart from husband). Moreover, the statute does not require that spouses share the same domicil when a marriage breaks down. G. L. c. 208, §§ 4 and 5. In any event, the judge found that the marriage broke down in Massachusetts. The judge did not err in finding subject matter jurisdiction over this case.

b. *Personal jurisdiction.* In order for the court to exercise

personal jurisdiction over the husband, the wife first must prove by a preponderance of the evidence that the terms of G. L. c. 223A, § 3 (*g*), have been satisfied. *Cepeda* v. *Kass*, 62 Mass. App. Ct. 732, 740 (2004) (in deciding motion to dismiss for lack of personal jurisdiction, court has discretion to determine personal jurisdiction by preponderance of evidence without waiting for trial on merits). See *Heins* v. *Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG*, 26 Mass. App. Ct. 14, 16 (1988), and cases cited. Once the statute has been satisfied, the constitutional requirements of due process also must be met. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979).

(i) *General Laws c. 223A, § 3 (g)*. The Massachusetts long-arm statute, G. L. c. 223A, § 3 (*g*), provides, in pertinent part:

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . maintaining a domicile in this commonwealth while a party to a personal or marital relationship out of which arises a claim for divorce, alimony, property settlement, . . . child support or child custody; or the commission of any act giving rise to such a claim . . . ."

It is clear that in making her determination, for purposes of her report, that the court had personal jurisdiction over the husband, the judge concluded that the statute required that both the marital domicil and the "act" that occurred be in the Commonwealth. Concerning domicil, the judge determined that, although the husband may have intended to find a job and move to Massachusetts, he never abandoned his domicil in Arizona.

We first address whether the judge was correct in assuming that, under the statute, the husband and wife both had to be domiciled in Massachusetts at the time the act occurred in order for the statute to apply. Looking at the plain language of the statute, including the semicolon after the phrase mentioning domicil, followed by the disjunctive "or," we conclude that the statute sets out two independent grounds for exercising personal jurisdiction over a party, one involving maintaining a marital domicil and one involving the commission of any act that gives

rise to the stated claim for divorce. "It is fundamental to statutory construction that the word 'or' is disjunctive 'unless the context and the main purpose of all the words demand otherwise.' " *Bleich* v. *Maimonides Sch.*, 447 Mass. 38, 46-47 (2006), quoting *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Auth.*, 350 Mass. 340, 343 (1966). We discern nothing in the statute's language that would "demand" that we treat the word "or" other than as disjunctive.

Our conclusion comports with the statute's history and purpose. Statute 1993, c. 460, § 86, deleted the original G. L. c. 223A, § 3 (*g*), which required that the parties' marital domicil be in Massachusetts for at least one year within the two years immediately preceding the commencement of an action for divorce.[10] The 1993 amendment inserted a semicolon after the language addressing domicil, as well as the phrase "*or* the commission of any act giving rise to such a claim" (emphasis added). This amendment also added "personal" relationship to the statute's language, whereas only marital relationships were covered in the previous version. See note 10, *supra*.

The change to G. L. c. 223A, § 3 (*g*), was part of a bill (1993 House Doc. No. 4944) introduced in the Legislature by Governor William F. Weld that had the broad goal of amending relevant statutes to improve the State's ability to obtain child support payments from absent parents. Reading the statute as setting forth two independent grounds for personal jurisdiction comports with this goal. The second part of the statute provides personal jurisdiction over an individual who is not domiciled in the Commonwealth but who committed an "act" here, such as fathering or conceiving a child.

Given our conclusion concerning the statutory scheme, we

---

[10]General Laws c. 223A, § 3 (*g*), inserted by St. 1976, c. 435, stated that a court had personal jurisdiction over a person "living as one of the parties to a duly and legally executed marriage contract, with the marital domicile of both parties having been within the commonwealth for at least one year within the two years immediately preceding the commencement of the action, notwithstanding the subsequent departure of the defendant in said action from the commonwealth, said action being valid as to all obligations or modifications of alimony, custody, child support or property settlement orders relating to said marriage or former marriage, if the plaintiff continues to reside within the commonwealth."

leave for another day a full analysis of the meaning of the first part of the statute, discussing domicil, *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650 (1998),[11] and focus on whether the judge was correct when she found that, pursuant to the statute, the "act(s) which gave rise to the wife's claims, i.e., the conversations between the parties which eventually led the wife to determine that the parties' marital relationship was irreparably damaged, occurred in the commonwealth."

Without addressing these conversations, the husband argues that no "act" within the meaning of the statute occurred in Massachusetts, and the wife's act of leaving Arizona was the precipitating event that gave rise to the divorce. However, we conclude that the judge properly determined that the conversations were an act that gave rise to the wife's claim for divorce based on irretrievable breakdown of the marriage. We see no

[11]In *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650, 653 (1998), the husband and wife were married in Massachusetts and lived here from 1959 to 1966. The husband was in the military and the family eventually settled in Florida in 1975. *Id*. In 1977, the wife, pregnant with the parties' youngest child, left the husband and moved back to Massachusetts. *Id*. In 1995, she filed a complaint for divorce in Massachusetts. *Id*. at 650. Because the wife filed no affidavit "elaborating upon" any of her assertions, the court stated that the wife failed to establish personal jurisdiction over the husband. *Id*. at 653-655. The court noted that for it to have personal jurisdiction over the husband pursuant to the statute, the wife would have had to "demonstrate . . . that the cause of action for the 1995 divorce arose while the parties maintained a domicile in Massachusetts." *Id*. at 654. The court concluded that the irretrievable breakdown of the marriage had to have occurred in Florida, because the husband, in his uncontroverted affidavit, stated that he visited Massachusetts only once since 1977, to attend his daughter's high school graduation. *Id*. at 653, 655.

*Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212 (2005), which the judge cited in her findings, is not to the contrary. Those parties were married in a civil ceremony in Massachusetts in 1988 and lived here until 1994 when the husband moved to Bahrain because of his job. *Id*. at 213. The couple lived together "sporadically over the next two years." *Id*. In 1997, both the husband and wife filed for divorce, she in Massachusetts and he in Turkey. *Id*. at 214. Although a Turkish court granted the husband a divorce, the Appeals Court held that Massachusetts had personal jurisdiction over the husband because the marital relationship in Massachusetts gave rise to the wife's claims for alimony and the division of marital assets that were triggered by the divorce. *Id*. at 214-215, 216. The court distinguished the *Windsor* case, saying that it dealt with where the marriage broke down, whereas in the *Unal* case, the parties were already divorced and the case concerned the wife's economic claims which arose in Massachusetts. *Id*. at 216-217.

reason to conclude that words cannot constitute an act within the meaning of the statute if they are of the nature that could cause the irretrievable breakdown of a marriage.[12] In the marital context, an exchange of words between husband and wife often may be the sole act that leads one or both of them to conclude that the marriage is over. The husband does not controvert that the conversations took place, and there was a sufficient showing that the conversations gave the wife a reason to conclude that the marriage was over.

(ii) *Due process.* Our conclusion that the wife has met her burden to show that the statutory requirements are satisfied does not end the inquiry concerning whether the court has personal jurisdiction over the husband. We also must determine whether constitutional requirements of due process have been met.[13] *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). "Federal due process . . . requires that there be at least a minimum level of contact between the nonresident [husband] and the forum State that reflects that the [husband] has purposefully conducted activities within that State, 'thus invoking the benefits and protection of its laws.' " *Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212, 217 (2005), quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, *supra* at 7, quoting *Great W. United Corp.* v. *Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978) (jurisdiction comports with due process if individual maintains minimum contacts with State so that traditional notions of fair play and justice are not offended or performs acts by which individual purposefully avails himself of privilege of conducting activities in forum State).

Here, the judge determined that, if the court had personal jurisdiction over the husband, there were enough contacts to satisfy due process. We agree. The husband, inter alia, made several visits to Massachusetts where he and the wife lived as

[12]Words also have legal import in other contexts. See, e.g., *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 418-420 (2005) (oral contract); *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429-432 (1991) (defamation).

[13]In addition, as discussed above, there are safeguards built into the requirements for subject matter jurisdiction. See *Caffyn* v. *Caffyn*, 441 Mass. 487, 497 (2004).

husband and wife and presented themselves to others and transacted their personal and family business as a married couple. Two cars were registered and insured in Massachusetts in the husband's name, and he signed for a joint bank account and safe deposit box. He concedes in his brief that he signed jointly for the safe deposit box in order to have access to it. He also interviewed for at least one job in Massachusetts and filed a motion for custody of his minor children in the Probate and Family Court.

We are not persuaded by the husband's argument that the judge erred in finding enough contacts to satisfy due process. He does not address directly the specific contacts listed above, instead focusing exclusively on his assertion that if he merely acquiesced in the children's moving to Massachusetts when the wife moved "against his will," contacts "incidental" to the move would not satisfy due process. See, e.g., *Kulko* v. *Superior Court*, 436 U.S. 84, 94 (1978) (holding that father who acquiesced to daughter's living with mother who moved to California following marital separation did not purposefully avail himself of benefits and protections of California law to satisfy due process requirements).

Nor are we persuaded by his argument that due process is not satisfied because the parties lived in Arizona for approximately fifteen years, and the "heft" of the marriage was thus in Arizona. See *Akinci-Unal* v. *Unal, supra*; *Anderson* v. *Anderson*, 39 Mass. App. Ct. 907, 908 (1995); *Rutledge* v. *Rutledge*, 26 Mass. App. Ct. 537, 539 (1988). Each of these cases involved postdivorce actions. In the *Akinci-Unal* case, the foreign courts did not adjudicate the wife's economic claims. *Akinci-Unal* v. *Unal, supra* at 221. See note 11, *supra*. In the *Rutledge* case, the husband and wife were married in Georgia in 1956. *Rutledge* v. *Rutledge, supra* at 538. They lived in Massachusetts for only two years, 1976 to 1978, when the husband moved out and the wife remained in Massachusetts with the children. Then, in 1986, the husband sought and obtained a divorce judgment in New Hampshire. *Id.* The issue was whether a New Hampshire court exceeded its jurisdiction by deciding issues of custody and other matters where there was no personal jurisdiction over the wife. *Id.* at 539. The court, invoking G. L. c. 223A, held

that Massachusetts had jurisdiction over the issues beyond the divorce itself because the "heft" of the marriage, i.e., the "wife and children living together as a family," was in Massachusetts and the house was in the husband's name, *id.* at 539-540. Thus, the court concluded, due process was satisfied. *Id.* at 540.

In *Anderson* v. *Anderson, supra* at 908, the court recognized a judgment of divorce the husband obtained in New Hampshire in 1993. The court concluded, however, that as to alimony and asset distribution, the New Hampshire court exceeded its jurisdiction because it had no basis for personal jurisdiction over the wife at the time the divorce was granted. The court noted that, in these circumstances, it was proper for the Probate and Family Court to exercise jurisdiction over the husband based on the heft of the marriage being in Massachusetts. *Id.* However, the court concluded that there was an independent basis for jurisdiction: the wife had filed an action for divorce herself in 1986, when both parties lived in Massachusetts. *Id.* at 907, 908.

Although the "heft" of a marriage may be a useful concept in a court's analysis of personal jurisdiction in certain circumstances, it is not a deciding factor in determining whether the evidence is sufficient to demonstrate that the requirements of the statute and due process have been met. Here there is ample evidence that the husband had the minimum contacts necessary to satisfy due process.[14]

*Conclusion.* For the reasons set forth above, the answer to the reported question is that the Probate and Family Court has personal jurisdiction over the husband pursuant to G. L. c. 223A, § 3 (*g*). We also conclude that the court has subject matter jurisdiction over the case and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

[14]The judge found that the husband has the superior economic resources and flexibility in work schedule to litigate in Massachusetts. Convenience is not controlling for personal jurisdiction. *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102, 108-109 (1980).