NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13455

COMMONWEALTH vs. A.Z.


Norfolk.     November 6, 2023. - January 25, 2024.

Present: Gaziano, Lowy, Kafker, Wendlandt, & Georges, JJ.


Incompetent Person, Criminal charges, Commitment. Due Process of Law, Competency to stand trial. Practice, Criminal, Competency to stand trial. Moot Question.



Complaint received and sworn to in the Wrentham Division of the District Court Department on July 9, 2018.

A hearing on an order for hospitalization and examination was had before Steven E. Thomas, J.

The Supreme Judicial Court granted an application for direct appellate review.


Devorah Anne Vester, Committee for Public Counsel Services, for the defendant.
Michael McGee, Assistant District Attorney, for the Commonwealth.
Justin M. Woolf, Tatum A. Pritchard, Steven J. Schwartz, Alex Bou-Rhodes, Phillip Kassel, & Jennifer Honig, for Disability Law Center, Inc., & others, amici curiae, submitted a brief.

LOWY, J. This case involves the constitutional rights of a criminal defendant who was involuntarily hospitalized for a competency determination pursuant to G. L. c. 123, § 15 (b) (§ 15 [b]). An involuntary commitment infringes upon a defendant's fundamental right to liberty and thus must satisfy strict scrutiny under the Massachusetts Declaration of Rights and the United States Constitution. See Matter of a Minor, 484 Mass. 295, 309 (2020). To pass strict scrutiny, the involuntary commitment must be the least restrictive means available to vindicate the governmental interest at stake. Id.

Accordingly, we conclude that substantive due process mandates that a judge find that hospitalization is required before involuntarily committing a criminal defendant to a hospital for a competency determination. Specifically, we hold that it is unconstitutional, as applied, for a court to hospitalize a pretrial defendant under § 15 (b), for a clinical evaluation and observation of competency, absent a finding by the judge, by clear and convincing evidence, that hospitalization is the least restrictive means available to determine adequately a criminal defendant's competency to stand trial.

We have not previously held that a District Court judge acting pursuant to § 15 (b) must make such findings, and the

judge here did not do so.  Accordingly, we conclude that the defendant's constitutional rights were violated.[1]

1.  Background.  a.  G. L. c. 123, § 15.  As this court has observed previously, G. L. c. 123, § 15, provides for two categories of competency evaluations.  See Garcia v. Commonwealth, 487 Mass. 97, 106 n.15 (2021).  First, pursuant to G. L. c. 123, § 15 (a) (§ 15 [a]),

> "a judge may order an evaluation of a defendant by a court clinician before trial if the judge doubts whether the defendant is competent to stand trial or criminally responsible by reason of mental illness . . . .  That examination is typically brief and takes place in the court house or in a place where the defendant is being detained before trial."

Garcia, supra.  Second, following a § 15 (a) evaluation and pursuant to § 15 (b),

> "the judge may then order that the person be involuntarily hospitalized for up to twenty days, for observation and a more detailed examination, if, based on the court clinician's evaluation, the court 'has reason to believe that such observation and further examination are necessary in order to determine whether mental illness or mental defect have so affected a person that he is not competent to stand trial or not criminally responsible.'"

Garcia, supra, quoting G. L. c. 123, § 15 (b).  The judge may specifically order the person be hospitalized under § 15 (b) at

---

[1] We acknowledge the amicus brief submitted by Disability Law Center, Inc., Mental Health Legal Advisors Committee, Center for Public Representation, and Massachusetts Association for Mental Health.

Bridgewater State Hospital if the person is male and appears to require strict security.  G. L. c. 123, § 15 (b).

b.  Facts.  On July 9, 2018, the defendant was arraigned in the Wrentham Division of the District Court Department for a "bomb/hijack threat" in violation of G. L. c. 269, § 14 (b).[2]  On January 10, 2019, while released on personal recognizance, she underwent a § 15 (a) evaluation with a court clinician, Dr. Leah Robertson.  The District Court judge held a hearing later that day to determine whether a § 15 (b) evaluation was necessary.

The defendant asserted that hospitalization was not necessary for further evaluation of competency, and she requested an outpatient § 15 (b) examination.  In support of the defendant's motion, defense counsel asserted that Dr. Patricia Schmitz, an independently retained clinician, "told [counsel] that she believes that she could complete a [§ 15] evaluation on an outpatient basis."

Thereafter, Dr. Robertson testified as to her observations of the defendant during the § 15 (a) evaluation.  Dr. Robertson specifically testified that, based on the § 15 (a) evaluation, she did not believe the defendant "possesse[d] the ability to consult with her attorney in a rational manner in her own best

_____

[2] On August 13, 2018, the Commonwealth amended the charge to a "threat to commit crime:  'shoot someone'" in violation of G. L. c. 275, § 2.

interest."[3]  She then recommended that the defendant receive further evaluation at a psychiatric hospital.  At the conclusion of the hearing, the judge endorsed Dr. Robertson's recommendation and ordered that the defendant be committed to the Solomon Carter Fuller Mental Health Center for twenty days for observation and further examination.

Although the defendant was ultimately found competent to stand trial,[4] the Commonwealth dismissed the case against her on October 1, 2019.

2.  Discussion.  a.  Mootness.  The Commonwealth contends that we need not reach the merits of this appeal because the case has been dismissed and the defendant's appeal is moot.  But "[w]hen considering other statutory provisions that allow involuntary civil commitment, we have determined that the continuing stigma of a potentially wrongful commitment alone sufficed to defeat a claim of mootness."  Garcia, 487 Mass. at 102, quoting Matter of a Minor, 484 Mass. at 299.  The same

---

[3] A defendant is incompetent to stand trial if he or she "lacks the capacity to understand the nature and object of the proceedings against him [or her], to consult with counsel, and to assist in preparing his [or her] defense." Commonwealth v. Jones, 479 Mass. 1, 12 (2018), quoting Commonwealth v. Crowley, 393 Mass. 393, 398 (1984).

[4] Following the defendant's commitment pursuant to § 15 (b), she was found incompetent to stand trial.  The defendant was then committed for further observation and examination under G. L. c. 123, § 16 (a), after which she was found to be competent.

continuing stigma follows a wrongful, involuntary commitment under § 15 (b), and therefore, the defendant has a surviving personal interest in adjudicating whether the nature of her confinement was wrongful.  Further, "even absent the defendant's surviving interest, 'it is well established that cases involving the confinement of mentally ill persons present classic examples of issues that are capable of repetition, yet evading review, which thus warrant appellate review even after the confinement ends.'"  Garcia, supra, quoting Pembroke Hosp. v. D.L., 482 Mass. 346, 351 (2019).  Accordingly, the defendant's appeal is not moot.

b.  Standard of commitment under G. L. c. 123, § 15 (b).  The defendant argues that § 15 (b) requires a judge to make two factual findings before involuntarily committing a defendant: (i) a finding of a likelihood of serious harm absent hospitalization and (ii) a finding that hospitalization is the least restrictive means of determining competency.  We review questions of statutory interpretation de novo.  Pembroke Hosp., 482 Mass. at 351.

i.  Likelihood of serious harm.  The defendant contends that § 15 (b) only authorizes an involuntary commitment if the failure to detain a defendant would create a likelihood of serious harm to the defendant or others.  We decline to adopt this statutory interpretation.

"Our primary duty is to interpret a statute in accordance with the intent of the Legislature." Pembroke Hosp., 482 Mass. at 352, quoting Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996). Here, the Legislature expressly incorporated a likelihood of serious harm standard in several nearby provisions of c. 123. See, e.g., G. L. c. 123, §§ 7, 8, 9, 12. That the Legislature chose to exclude this standard in § 15 (b) demonstrates that the Legislature did not intend for this standard to govern a § 15 (b) determination. See Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003), quoting 2A N.J. Singer, Sutherland Statutory Construction § 46.06, at 194 (6th ed. rev. 2000) ("[W]here the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").

The defendant argues that the Legislature's intent is instead demonstrated through § 15 (b)'s reference to a "strict security" standard, which incorporates a likelihood of serious harm standard. Section 15 (b) provides for two independent alternatives: "hospitaliz[ation] [(i)] at a facility or, [(ii)] if such person is a male and appears to require strict security, at the Bridgewater state hospital" (emphasis added). See G. L. c. 123, § 15 (b); Miller v. Miller, 448 Mass. 320, 329 (2007), quoting Bleich v. Maimonides Sch., 447 Mass. 38, 46-47 (2006) ("It is fundamental to statutory construction that the word 'or'

is disjunctive 'unless the context and the main purpose of all the words demand otherwise'").  The latter "strict security" standard is thus inapposite to the preceding clause of the statute and provides no evidence of the Legislature's intent as to commitments that, like the one in this case, do not take place at Bridgewater State Hospital.

ii.  <u>Least restrictive means</u>.  The question we address next is whether a defendant's hospitalization for twenty (or even forty[5]) days for the purpose of determining competency is the least restrictive means available to vindicate a compelling governmental interest.  The Commonwealth has a compelling governmental interest in determining whether a defendant is competent to stand trial, and a defendant has a constitutional right not to be tried if he or she is incompetent.  See <u>Matter of E.C.</u>, 479 Mass. 113, 119 (2018) (there is "a compelling interest in [the defendant] not being tried if incompetent").

To further this compelling interest, § 15 (<u>b</u>) authorizes a court to involuntarily hospitalize a defendant for up to twenty, or forty, days.  Section 15 (<u>b</u>) thus infringes upon a

---

[5] Section 15 permits a court to extend the twenty-day period to up to forty days if "an examining qualified physician or an examining qualified psychologist believes that observation for more than twenty days is necessary," "notif[ies] the court and . . . request[s] in writing an extension of the twenty day period, specifying the reason or reasons for which such further observation is necessary."  See G. L. c. 123, § 15 (<u>b</u>).

"paradigmatic fundamental right" -- "[t]he right of an individual to be free from physical restraint." Garcia, 487 Mass. at 102-103, quoting Matter of E.C., 479 Mass. at 119. Indeed, "[w]e have previously described a temporary hospitalization as short as three days under G. L. c. 123, § 12, as a 'massive curtailment' of liberty." Garcia, supra at 103, quoting Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 784 (2008).[6]

As § 15 (b) encroaches upon a fundamental right, it is subject to strict scrutiny. See Matter of a Minor, 484 Mass. at 309. To satisfy strict scrutiny, the law must be "narrowly tailored to a compelling government interest," Garcia, 487 Mass. at 103, and "be the least restrictive means available to vindicate that interest," Matter of a Minor, supra, quoting Commonwealth v. Weston W., 455 Mass. 24, 35 (2009).

---

[6] We note that the analysis infra applies only to defendants who are not detained pretrial. Pretrial detainees' "liberty is curtailed" as soon as the individual is detained, see Velazquez v. Commonwealth, 491 Mass. 279, 283 (2023), and therefore, pretrial detainees have a different liberty interest from that of defendants who have been released. Cf. Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 461 (1990) (restrictions or conditions of confinement for pretrial detainees need only be "reasonably related to a legitimate governmental objective" and not constitute punishment).

Accordingly, for § 15 (b) to pass constitutional muster as applied,[7] a judge may only involuntarily hospitalize a defendant if the judge finds that the Commonwealth, the party with the burden of proof, demonstrates, "by clear and convincing evidence, that there are no appropriate, less restrictive alternatives that adequately would [allow for a determination of a defendant's competency]."  See Matter of a Minor, 484 Mass. at 310.  See also Commonwealth v. O'Neal, 367 Mass. 440, 448, S.C., 369 Mass. 242 (1975) (strict scrutiny requires "show[ing] [of] the absence of less restrictive means to reach its compelling goal").  Cf. Commonwealth v. Gomes, 407 Mass. 206, 213 (1990) ("before incarcerating a defendant for nonpayment, a judge must inquire into reasonable alternatives to incarceration, such as a long-term payment schedule or community service").  The "focus" of a judge's analysis should be on whether there are any other "viable, plausibly available options."  See Matter of a Minor, supra.  Requiring judges to consider less restrictive

---

[7] We recognize that we discussed the constitutionality of § 15 in Garcia, which concerned the interpretation of G. L. c. 123, § 16 (§ 16).  See Garcia, 487 Mass. at 106 n.15.  We did so because the Commonwealth argued that the court's interpretation of § 16 would have an impact on the interpretation of § 15.  We disagreed and explained that § 15 is distinguishable from § 16.  See id.  We specifically stated -- in dicta -- that, unlike § 16, § 15 is narrowly tailored because "only defendants for whom a longer period of observation and examination is needed will be hospitalized against their will." Id.  We did not resolve this issue in Garcia, and now, squarely facing the issue, we do so.

alternatives "ensure[s], in accordance with the principle of due process, that involuntary commitment remains a viable, but carefully circumscribed, tool of last resort." See id. at 310-311.

The Commonwealth may satisfy this burden through expert opinion testimony. See Matter of a Minor, 484 Mass. at 310 ("As a practical matter, in evaluating less restrictive alternatives, judges may seek guidance from the qualified physicians, psychologists, and social workers who already are required to testify in these cases . . . [and] respondent's counsel may argue [the] sufficiency [of various forms of treatment and services]"). For example, with respect to whether an outpatient evaluation may be sufficient, an expert may testify that long-term observation in a hospital setting as opposed to sporadic outpatient examinations is necessary to adequately determine whether a defendant is competent to stand trial.

The Commonwealth also may meet its burden with other types of evidence. A judge may find that outpatient evaluations are not viable, for example, if the Commonwealth shows that the defendant failed to comply with mental health counselling while on pretrial release or the defendant had a history of not appearing in court or for various treatment programs. See Matter of a Minor, 484 Mass. at 310 (judge did not abuse her discretion in hospitalizing juvenile despite existence of

voluntary program, "because she did not have confidence the juvenile actually would attend that program"). The Commonwealth may also prove that an alternative suggested by the defendant is not plausibly available. See, e.g., United States v. Deters, 143 F.3d 577, 583-584 (10th Cir. 1998) (there were "'sufficiently compelling' reasons to justify detaining the defendant during her [competency] examination," including concern that outpatient examination could not occur in State in which trial was to take place because out-of-State defendant could not secure place to live).

c. Application. Applying the interpretation of § 15 (b) outlined supra, we conclude that a judge is required to make a particularized finding that there are no less restrictive alternatives before ordering hospitalization. "'[T]he constitutional demands of due process' dictate that a 'statement of findings and reasons, either in writing or orally on the record, is a minimum requirement where a defendant faces a loss of liberty." Matter of a Minor, 484 Mass. at 306, quoting Brangan v. Commonwealth, 477 Mass. 691, 708, S.C., 478 Mass. 361 (2017). Specifically, the "judge must make clear, in writing or orally on the record, the evidence he or she credited in support of the legal conclusion" that it is necessary to hospitalize the defendant pursuant to § 15 (b). See Matter of a Minor, supra at 307. This includes evidence the judge credited supporting the

conclusion that hospitalization is the least restrictive means of determining competency. See Brangan, supra at 708-709 ("Requiring a particularized statement as to why no less restrictive condition will suffice to assure the defendant's presence at future court proceedings is appropriate in light of the applicable standard of substantive due process . . .").

At the conclusion of the hearing in this case, the District Court judge made the following factual findings:

> "I do understand Dr. Leah Robertson's presentation as [to] her observations, her thoughts concerning the challenges that you're presented with and the way in which she observed your behavior and characteristics today and prior. I understand that she does believe that you have this illness, and that you are not in a position to be able to confidently assist counsel, and therefore she is recommending further evaluation and a work-up under [G. L. c. 123, § 15 (a), (b)].
>
> "I'm going to allow that and endorse her suggestion that you be committed to the Solomon Carter Fuller Mental Health . . . Center for further evaluation under the chapter and section."

That is, the judge made a finding, based on Dr. Robertson's testimony, that the defendant required further evaluation and observation to determine whether she was competent to stand trial.

However, the judge did not make an express finding that hospitalization was, by clear and convincing evidence, the least restrictive means to complete this further evaluation and observation, and the clinician was not asked directly to opine

on the issue.  Due process requires more, and the defendant's constitutional rights were violated when she was involuntarily committed absent such an express finding.[8]  Cf. Matter of a Minor, 484 Mass. at 306-307 (judge's findings that "there [was] no less restrictive alternative" to commitment insufficient because judge did not "elucidate which subsidiary facts she relied upon in reaching her conclusions").

3.  Conclusion.  Because the defendant's commitment was unconstitutional, the order of commitment must be vacated and set aside.  The matter is remanded to the District Court for entry of an order consistent with this opinion.

So ordered.

---

[8] Hospitalization may well have been required in this case. However, the Commonwealth did not meet its burden because the clinician was never directly asked whether outpatient examination was a viable alternative or whether long-term evaluation and observation was necessary to adequately evaluate the defendant.