van Gestel, Allan, J.
This matter comes before the Court on Defendant’s Emergency Motion to Dismiss for Lack of Personal Jurisdiction, Paper #7. The motion is grounded on Mass.R.Civ.P. Rule 12(b)(2), and challenges this Court’s jurisdiction over the person of the defendant, Smith Bagley, Inc. (“Smith Bagley”).
BACKGROUND
The plaintiffs, Cellular Express, Inc., d/b/a Boston Communications Group, and Boston Communications Group, Inc. (collectively, “BCGI”), are Massachusetts corporations, based in Bedford.
Smith Bagley is a privately held District of Columbia corporation, with its principal place of business in Show Low, Arizona. It is a cellular telephone company that operates in Arizona, New Mexico, Utah and the Navajo Nation.
Smith Bagley is not registered as a foreign corporation in Massachusetts. Nor does Smith Bagley maintain an office, any employees, any bank accounts, any telephone listing, or any mailing address in Massachusetts. It does not own, rent or use any property in the Commonwealth. It has no agent for service of process here. It does not pay any taxes in Massachusetts. Nor does it advertise for or solicit business, ship or deliver products into, or provide any services to persons or entities in Massachusetts.[2]
On March 1, 2000, Smith Bagley entered into an agreement with BCGI. Smith Bagley suggests that it dealt with an agent for BCGI located in California during the negotiation process leading to the contract. Further, Smith Bagley says that it executed the contract in Arizona.
This law suit charges, basically, that Smith Bagley breached the contract, as amended, in January 2006, when its counsel sent a letter terminating the contract prematurely.
The contract is described as a prepaid connection agreement (the “PCA”). Under the PCA, BCGI agreed to provide Smith Bagley with a prepaid billing and metering system and services that included hardware and software for call processing and digit collection from Smith Bagley’s prepaid and roaming subscribers through the use of BCGI’s C2C platform.
Under the PCA, at Smith Bagley’s switching center in Show Low, Arizona, BCGI installed hardware and software purchased from it by Smith Bagley. BCGI also trained Smith Bagley personnel, at the facility in Arizona, on the proper use of the BCGI systems.
As part of its opposition to the motion to dismiss, BCGI submitted the affidavit of its Chief Sales Officer, James Anderson (“Anderson”), Paper #12. Among other things, Anderson describes in his affidavit how the PCA process worked. He says, in relevant part, the following:
[T]he ongoing service for which Smith Bagley contracted took place almost entirely in Massachusetts, supported by BCGI’s Massachusetts-based employees in Bedford.
BCGI’s Real Time Billing service allows a wireless operator [like Smith Bagley] to provide their subscribers, without a contract or term, the ability to use wireless services on a prepaid basis, including voice calls and data services.. . . BCGI combines these features with a transaction-processing infrastructure that includes Web-based customer care (also based in Massachusetts).
While BCGI has field personnel who provide implementation support for out-of-state customers, BCGI’s business, legal and senior management personnel, as well as almost all of the equipment and support personnel for providing the service subject to the Smith Bagley PCA and related contracts, are centrally located at BCGI’s headquarters in Bedford, Massachusetts. BCGI also has a second “redundant” data center site located in Woburn, Massachusetts.
[I]n order for this service to work as planned, BCGI needed to build and maintain an extensive database, in Massachusetts, with information about Smith Bagley’s prepaid teleconmunications users ... Smith Bagley would initially provide BCGI with the telephone numbers of prepaid users as well as the number of prepaid minutes purchased. *202 Smith Bagley would send its prepaid customer information to BCGI personnel in Massachusetts by email communications initiated from Smith Bagley’s offices in Arizona.
With the foregoing information, BCGI constructed a database at BCGI’s Massachusetts facility, which was constantly updated by Smith Bagley with new telephone numbers and rate plans, programs or initiatives offered to its users, all emailed in Massachusetts.
With respect to prepaid customers, there were two functions performed in Arizona related to the PCA, one owned by Smith Bagley (the subscriber messaging node) and the other by BCGI (a signaling interface allowing Smith Bagley’s customers to be connected to BCGI’s Massachusetts platform).
Both of the systems in Arizona were located at Smith Bagley’s facility and were set up specifically pursuant to the PCA to provide service to Smith Bagley.
Once a prepaid subscriber made a call, the BCGI signaling interface at Smith Bagley’s facility did route the call to Massachusetts, where the bulk of the activity related to the call was performed. BCGI’s computer servers would then check the subscriber’s number against the Smith Bagley database information to determine if the number was active and whether there was at least a minute of prepaid service attributable to the subscriber’s number (the minimum required to place a call). That information was sent back to Arizona and Smith Bagley’s messaging node would inform the customer how much time was available and whether the call could be connected. BCGI’s Massachusetts facility would continue to monitor the call and, once the call was completed, create a call detail record and debit any remaining call time by the cost of the call just completed.
The PCA provides that it will be interpreted according to Massachusetts law. It also provides that for all equipment purchased by Smith Bagley from BCGI, Smith Bagley was required to take delivery F.O.B. at BCGI in Massachusetts.
This is the factual background upon which the motion to dismiss will be assessed.
DISCUSSION
“When a defense of lack of personal jurisdiction . .. is raised, the court should dispose of those issues before dealing with questions . .. that go to the merits of the case.” Attorney General v. Industrial National Bank of Rhode Island, 380 Mass. 533, 534 (1980). “When, as here, the assertion of in personam jurisdiction has been challenged under rule 12(b)(2), ‘the plaintiffif] bear[s] the burden of establishing sufficient facts on which to predicate [that] jurisdiction.’ ” Windsor v. Windsor, 45 Mass.App.Ct. 650, 652-53 (1998), citing Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 3 (1979).
In the matter before the Court, BCGI relies upon G.L.c. 223A, Sec. 3(a), the Massachusetts longarm statute, which in this instance requires a showing that Smith Bagley was or is “transacting any business in the Commonwealth.”
“Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses.” ... A paramount due process requirement is that there exist “minimum contacts” between the nonresident defendant and the forum state . . . Such contacts must not be merely casual or accidental, but must rather reflect acts performed by the defendant “by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.”
Whether the exercise of personal jurisdiction over a defendant is permissible under this analysis is dependent upon the particular facts of each case.
Windsor, supra, 45 Mass.App.Ct. at 652.
Given the fact that, according to the Watkins affidavit, Smith Bagley, in any general way, does no business in Massachusetts and has no specific contacts with the Commonwealth, BCGI’s Anderson affidavit becomes pivotal in assaying whether BCGI has met its burden of showing personal jurisdiction over Smith Bagley in this case.
The Anderson affidavit reveals much occurring in Massachusetts. But it is essentially all work and activity by BCGI alone.
To this Court, the most significant revelations in the Anderson affidavit come in his description of what happens in servicing the PCA. He tells the Court that Smith Bagley sends to BCGI — by e-mail from Arizona — information necessary for BCGI to create a database on Smith Bagley’s prepaid user/customers in Arizona, New Mexico, Utah and the Navajo Nation. That act is not evidence of Smith Bagley transacting business in the Commonwealth.
Next, and key, when a prepaid caller in Arizona, New Mexico, Utah or the Navajo Nation makes a call, BCGI’s signaling interface, installed at Smith Bagley’s facility, routes the call to Massachusetts, where the bulk of the activity related to the call is performed by BCGI. Smith Bagley does nothing in Massachusetts. It does not even route the calls from Arizona to Massachusetts and back. BCGI does that.
Further, it is BCGI’s computer servers that check the Smith Bagley subscriber’s number against the *203 database, created by BCGI from information e-mailed to it from Arizona, to determine if the number is active and whether there is at least a minute of prepaid service attributable to the subscriber’s number. That information is then sent back to Arizona by BCGI, where Smith Bagley’s messaging node in Arizona picks it up and informs the customer how much time is available and whether the call can be connected.
It adds nothing to Smith Bagley’s presence in Massachusetts that BCGI’s Massachusetts facility continues to monitor the calls it routes to itself from Arizona and, once the calls are completed, that BCGI creates call detail records and debits any remaining call time by the cost of the calls completed. Again, that is the work of BCGI in Massachusetts, not Smith .Bagley.
Lastly, the alleged contractual breach was not by something done in Massachusetts. It was announced in a letter from Smith Bagley’s attorney, mailed from Pinetop, Arizona. See complaint, para. 26. And, Smith Bagley may — if the inference in the complaint is to be credited — have already commenced the migration of its customers to a new company’s system, in violation of the exclusivity provisions of the PCA, before its lawyer sent the letter. See complaint, para. 28. But again, none of that happened in Massachusetts.
The PCA contractual arrangement, operating as it did, is an insufficient base upon which to ground a determination that Smith Bagley transacted business in the Commonwealth, as those words are used in G.L.c. 223A, Sec. 3(a). There were no meaningful contacts here.
Neither has Smith Bagley “purposefully directed” its activities at residents of Massachusetts, see, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1977), nor has it done anything that should cause it reasonably to anticipate being haled into court here. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
ORDER
For the foregoing reasons, the Defendant’s Emergency Motion to Dismiss for Lack of Personal Jurisdiction, Paper #7, is ALLOWED. Final judgment is to enter accordingly.

 All of the facts described in this paragraph are taken from the affidavit of Richard L. Watkins, Paper #8. Watkins is the Chief Operations Officer of Smith Bagley.